EAST SIDE BUILDERS, INC., A NORTH CAROLINA CORPORATION; JEAN C. HOWE, TIPPIE T. GALUMBECK, REUBEN GRAND AND WIFE, ROSE GRAND, LEONARD FINK, W. RANDALL HARRIS AND WIFE, INEZ K. HARRIS, AND ETHEL S. McSWAIN, FOR THEMSELVES AND ALL OTHER LANDOWNERS WITHIN LAKE VIEW PARK DEVELOPMENT WHO MAY COME IN AND MAKE THEMSELVES PARTIES PLAINTIFF, v. WESLEY W. BROWN AND WIFE, ERMA C. BROWN.

(Filed 21 November, 1951.)

**1. Equity § 3—**

Ordinarily, laches will not bar relief when the delay has not worked an injury to the prejudice or disadvantage of those adversely interested.

**2. Same: Deeds § 16b—**

The lapse of some nine or ten years before instituting suit to compel defendant to comply with restrictive covenants by reconverting his house from a two-family to a one-family dwelling, *held* not barred by laches, since defendant was in no way prejudiced by the delay.

**3. Deeds § 16b—**

Plaintiff's evidence that a single block in a subdivision was developed as a unit and all lots therein conveyed by deeds containing restrictive covenants pursuant to a general scheme of development, is sufficient to withstand nonsuit in a suit to restrain defendant from violating one of the restrictive covenants.

**4. Same—**

Where plaintiff's evidence in his suit to restrain violation of restrictive covenants tends to show that the particular block in the subdivision in question was developed as a unit in accordance with a general scheme, the fact that numerous lots in other blocks of the subdivision were sold without restrictive covenants does not entitle defendant to nonsuit when it does not appear that a key map of the entire development had ever been placed on record or that any lots in the subdivision had been sold in reference thereto.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Rudisill, J.,* May Term, 1951, of BUNCOMBE.

This is an action by East Side Builders, Inc., and others, on behalf of themselves and all other parties owning lots in Lake View Park, in the City of Asheville, who may come in and be made parties plaintiff, against Wesley W. Brown and his wife, Erma C. Brown.

The plaintiffs allege that they are owners of lots and homes in Block B of Lake View Park, a restricted residential subdivision as appears on a plat thereof duly recorded in the office of the Register of Deeds for Buncombe County, North Carolina, in Plat Book 4, at page 40.

It is further alleged that prior to 28 April, 1924, Lake View Park, Inc., a North Carolina corporation, owned a large boundary of land situate in Beaverdam Ward, Asheville Township, Buncombe County, and established the same as "an exclusive, restricted residential district or boundary, for the use, security and comfort of those who may purchase homesites therein," and that "in order to assure homesite owners within Block B that such homesites within said block would ever remain an exclusive restricted residential district, included in the deed from Lake View Park, Inc., to a predecessor in title to the defendants Wesley W. Brown and wife Erma C. Brown, and in all other deeds to homesite owners within said Block B, its general plan of development . . ."

Among other covenants contained in deeds to lots in Block B, according to the allegations of the complaint, the grantees for themselves and their heirs, executors, administrators, assigns, and successors in title to said land conveyed, by acceptance of the deed, "doth covenant to and with the said party of the first part, its successors and assigns as follows: 'That they will not erect or suffer to be erected on the land above described any . . . house or building to be used as an apartment house,

tenement house, boarding house, two-family dwelling house, . . . or at any time use or suffer to be used any building or buildings erected thereon for any such purpose . . .' "

It is alleged in the complaint that the defendant, Wesley W. Brown, in accordance with his application for a building permit, erected a one-family residence on Lot 27, in Block B, and that the construction thereof was completed either in the latter part of the year 1940 or the early part of the year 1941, and with full knowledge of his covenant "with plaintiffs and other property owners in Lake View Park Development, and with full knowledge of his application for a building permit," for a one-family residence, the defendant, Wesley W. Brown, shortly after the completion of said residence altered its construction and converted it into a two-family residence; that the defendants have occupied one dwelling unit thereof and have rented the other unit to a second family since the year 1941.

It is also alleged by plaintiffs that a duly authorized restrictions committee of Lake View Park development visited the defendant, Wesley W. Brown, in the fall of the year 1941, and requested him to reconvert his building on Lot 27 of Block B, "into a one-family residence and comply with the restrictions set forth in the general plan of development of Lake View Park . . . but the said defendant, Wesley W. Brown, refused to accede to such request."

The plaintiffs for themselves and all other landowners within Block B of said Lake View Park, and all other landowners within Lake View Park development who may come in and make themselves parties plaintiff, pray the court that the defendants be perpetually enjoined from violating the restrictions set forth in the general plan of development of Lake View Park, and particularly those restrictions applying to Block B therein, by a mandatory injunction directing the defendants to reconvert their building into a one-family dwelling house.

The plaintiffs offered the testimony of Fred L. Sale: That he is a lawyer and has lived in Lake View Park since 1926; that he was secretary of Lake View Park, Inc., from the time it was organized in 1922 until it went out of business in 1930; that the corporation owned approximately 800 acres of land; that the property was laid off into blocks and the blocks into lots. Block B contains 12 lots and each block constituted a separate development, and "I have no idea how many lots were subdivided and sold by Lake View Park at or about the time that this block was divided and lots sold in it. There were probably four blocks in there, A, B, C, D. There were four blocks on that side of the lake, if I recall correctly, that were developed at approximately the same time." The corporation constructed streets, laid sewers and water lines, caused telephone lines to be placed around lot lines, laid off parkways, planted

shrubbery and grassed parkways. The corporation used a form deed and it had restrictions applicable to the individual blocks. There was no difference other than we reserved the right to make reservations and stipulations at variance in the different lots, but there was a general scheme of development, "Insofar as developing it as a residential district, the general scheme was applicable to all the blocks . . . In the general scheme there are a thousand lots, and all were laid out for the same purpose and to be utilized for the same purpose. Block B was no different in that respect from Block C, or a block a mile away from it. . . . I think that there were about 360 lots that we had developed, that had not been sold at the time the mortgage company foreclosed and put Lake View Park out of business. The real estate subdivision known as Lake View Park was practically out of business around 1930. I think it was 1933 that the foreclosure took place. The property itself had a large and substantial mortgage over all unsold property. Due to bank failures and troubles that every one experienced here at that time the mortgage was foreclosed on all the unsold lots, as well as on the undeveloped property. There were a great many lots that we purchased and mortgages came back on, and they were foreclosed by the general mortgage holders. When the mortgage was foreclosed, they took over the mortgages on lots that had been sold and not paid for along with the foreclosure. I can't imagine how many lots were hypothecated and went under the mortgage too. The original developers of the property, which was the company I was connected with, went completely out of the picture after the depression years; and after that time any lots that were sold were sold by someone else. I don't know just what all of those deeds may have contained, and I don't know as to whether restrictions were placed in all of them."

Ample evidence was offered to support the allegations to the effect that the defendants converted their residence into a two-family dwelling and rented one unit thereof as alleged.

At the close of the plaintiffs' evidence, defendants made a motion for judgment as of nonsuit on the grounds that plaintiffs had not proven facts sufficient to substantiate their alleged cause of action, and further that plaintiffs and their predecessors in interest, by reason of their laches in seeking relief against any alleged violation of said restrictions by the defendants, are now barred from demanding such relief.

"The court, after hearing argument of counsel for both plaintiffs and defendants on said motion, is of the opinion and so holds (in its legal discretion) that the evidence in this case shows that the violation of said restrictions, if any, by the defendants occurred during the year 1940 or 1941, and had been continuous since that time, and that no complaint, objection or effort to secure injunctive or other relief has ever been made by the plaintiffs, or their predecessors in interest, prior to the filing of

the instant action on the 12th day of September, 1950, and that the laches and acquiescence of the plaintiffs, and their predecessors in interest, for this period of time, is such as to defeat the application that they made in this action for a perpetual mandatory injunction and restraining order.

"And the court for the reasons above stated, among others, thereupon allows the motion of the defendants for a judgment as of nonsuit."

Judgment dismissing the action was accordingly entered, and the plaintiffs appeal, assigning error.

*John Y. Jordan, Jr., and Bernard & Parker for plaintiffs, appellants.*
*Kester Walton of Harkins, Van Winkle, Walton & Buck for defendants, appellees.*

DENNY, J.   The defendants contend the judgment as of nonsuit should be upheld on two grounds : (1) Laches on the part of the plaintiffs ; and (2) the failure of plaintiffs to prove facts sufficient to substantiate their alleged cause of action.

(1) The weight of authority is to the effect that delay in asserting a right will not bar relief where it has not worked an injury to the prejudice or disadvantage of those adversely interested.   30 C.J.S., section 116, page 531, *et seq.*   "Laches is such delay in enforcing one's rights as works disadvantage to another. . . . To constitute laches a change in conditions must have occurred that would render it inequitable to enforce the claim."   30 C.J.S., section 112, page 520, *et seq.   Stell v. Trust Co.,* 223 N.C. 550, 27 S.E. 2d 524; *Clark v. Henrietta Mills,* 219 N.C. 1, 12 S.E. 2d 682; *Teachey v. Gurley,* 214 N.C. 288, 199 S.E. 83.   There is no evidence to the effect that the defendants have been prejudiced or adversely affected in any manner by the delay in instituting this action. Therefore, the defendants were not entitled to a judgment as of nonsuit on the ground of laches.   In such cases, the statute of limitations will control, not laches.   *Clark v. Henrietta Mills, supra; Teachey v. Gurley, supra.*

(2) We think the plaintiffs offered sufficient evidence in support of the allegations in the complaint to withstand a motion for judgment as of nonsuit.   There is evidence which tends to show that Block B is a separate division and if such fact is duly found, it would be sufficient to entitle the plaintiffs to have the violation of any restrictive covenant in the defendants' deed enjoined, unless the violation is barred by the statute of limitations or laches.   See *Stephens Co. v. Homes Co.,* 181 N.C. 335, 107 S.E. 233, where it was held that the respective subdivisional plats "was designed to be a separate, distinct, and integral subdivision. . . . It follows, of course, when one of these subdivisional plats has been recorded, and lots sold with reference thereto, the principles of

estoppel and dedication then apply to the particular subdivision covered thereby." *Homes Co. v. Falls,* 184 N.C. 426, 115 S.E. 184; *Johnston v. Garrett,* 190 N.C. 835, 130 S.E. 835; *McLeskey v. Heinlein,* 200 N.C. 290, 156 S.E. 489; *Higdon v. Jaffa,* 231 N.C. 242, 56 S.E. 2d 661; *Sedberry v. Parsons,* 232 N.C. 707, 62 S.E. 2d 88.

On the other hand, there is evidence that tends to show that there was a general scheme applicable to the entire development of 1,000 lots, and that several hundred of these lots may have been sold without restrictions. Even so, it does not appear in the record on appeal that a general or key map of the entire development has ever been placed on record or that any lots have been sold by reference thereto, as was the case in *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697; *Humphrey v. Beall,* 215 N.C. 15, 200 S.E. 918; *Phillips v. Wearn,* 226 N.C. 290, 37 S.E. 2d 895.

In order that our citizens may construct their homes in areas that will be secure from the encroachment of business and commercial establishments, they have resorted to the use of restrictive covenants. And the use of such covenants is an inducement to purchase lots in restricted areas and to spend large sums in the construction of homes therein. As said by *Brogden, J.,* in *Starkey v. Gardner,* 194 N.C. 74, 138 S.E. 408, "This security and freedom ought not to be destroyed by slight departures from the original plan, guaranteed and safeguarded by restrictive covenants in the deeds under which the property is held. Nor should a property owner be held to have waived his rights and to have abandoned the protection conferred upon him by such covenants, by reason of disconnected and immaterial violations of the restrictions in the conveyances."

The judgment of nonsuit entered below is reversed and the cause remanded for further proceedings in accord with the applicable principles of law and equity.

Reversed and remanded.

VALENTINE, J., took no part in the consideration or decision of this case.