THOMAS J. HAWTHORNE, AND WIFE CHARLOTTE M. HAWTHORNE, JEROME MILTON, AND WIFE MARY SUE MOCK MILTON, C. CARL WARREN, JR., AND WIFE JOSEPHINE L. WARREN v. REALTY SYNDICATE, INC., MARSH REALTY COMPANY, AND MARSH FOUNDATION, INC.

No. 7826SC1106

(Filed 6 November 1979)

**1. Deeds § 20.7— action to enforce restrictive covenant — statute of limitations**

An action to enforce a restrictive covenant is governed by the six-year statute of limitations of G.S. 1-50(3) applicable to actions for injury to an incorporeal hereditament, and plaintiffs' action was clearly brought within this period.

**2. Deeds § 20.6— restrictive covenants—intent for enforcement by all lot owners**

Grantors intended that restrictive covenents would be enforceable by all lot owners in the subdivision, not just by adjoining lot owners, where some of the deeds provided that the restrictive covenants are "substantially similar to those contained in deeds to adjoining lot owners and are for the mutual protection of such lot owners," and some deeds provided that it is agreed that the restrictive covenants, "which are for the protection and general welfare of the community, shall be covenants running with the land."

**3. Deeds § 20— restrictive covenants—treatment of two blocks as single unit**

Blocks 7 and 9 of a subdivision were treated by the developers and purchasers as one single unit, and lot owners in Block 9 are proper parties to enforce restrictive covenants against lot owners in Block 7, where Blocks 7 and 9 were platted together; the restrictions were for the mutual protection of nearby lot owners and for the protection and general welfare of the community; and the restrictions contained in the deeds in Blocks 7 and 9 were substantially similar although not identical.

**4. Deeds § 20.1— restrictive covenants—racial restriction—separability of residential restriction**

Where a restrictive covenant stated that "the property shall be used for residential purposes only and shall be occupied and owned by only people of the white race," the racial restriction was invalid but the restriction to residential purposes remained valid and enforceable.

5. **Deeds § 20.1— residential restrictive covenant—fundamental change in neighborhood—public library—apartments**

The construction of a public library on a subdivision lot did not constitute such a radical and fundamental change in the neighborhood as to preclude the enforcement of a restrictive covenant limiting use of lots in the subdivision to residential purposes. Nor did the construction of apartment buildings on lots in the subdivision constitute such a change since the apartments did not violate the residential restrictive covenant.

6. **Deeds § 20.6— restrictive covenants—waiver against one lot—no estoppel to enforce against other lots**

Plaintiffs' waiver of their right to enforce restrictive covenants against one subdivision lot did not estop them from enforcing the restrictive covenants against the other lots in the subdivision.

APPEAL by plaintiffs and defendants from *Smith (David I.)*, *Judge.* Judgment entered 27 April 1978. Heard in the Court of Appeals 29 August 1979.

Plaintiffs, owners of lots in Blocks 7 and 9 of the Myers Park Development, filed suit to enjoin defendant Realty Syndicate, Inc. from utilizing Lots 6 and 7 of Block 7 for commercial purposes. The use allegedly violated the terms of a restrictive covenant limiting the land to residential use.

Defendants Marsh Foundation, Inc. and Marsh Realty Company, subsequent purchasers of interests in Lots 6 and 7, were joined as additional defendants.

After considering the evidence and relevant documents, the trial court made the following pertinent findings of fact:

"10. That the property is bounded by Providence Road, Hermitage Road, Granville Road and Hopedale Avenue, but the two blocks are separated by Queens Road;

11. That this area was subdivided into numerous lots fronting on the streets named and many of them were sold and are now owned or occupied by a great number of persons including the defendants in this action;

12. That the deeds conveying all lots in Blocks 7 and 9 contain restrictions that that [sic] they should be used only for residential purposes and the defendants in this action and other owners and occupants, either directly or through mense conveyances, hold their lots upon this condition;

13. That the restrictions in the various deeds differ only slightly with some deeds having ten paragraphs, some eleven, some twelve;

14. That some of the deeds provide that the restrictions 'Are for the protection and general welfare of the community and shall be covenants running with the land'; some of the deeds provide that the restriction shall be a covenant running with the land only; other deeds provide 'that the foregoing restrictions and covenants are substantially similar to those contained in deeds to adjoining lot owners and are for the mutual protection of such lot owners;'

15. That the deeds contain the following paragraph: 'The property shall be used for residential purposes only and shall be occupied and owned by only people of the white race';

16. That most of the lots in Blocks 7 and 9 are used for single-family residences;

17. That sometime during the period of 1954 the owners of lots in Block 7 acquiesced in the construction of a public library on Lot 10-A of Block 7, said library being illustrated by plaintiff's Exhibit 47 and Defendants' Exhibit Troutman 32, 33 and 34. Sometime during the period of 1969 and 1970 multi-family apartments, at least four stories in height, were constructed on Lots 8 and 9 of Block 7; construction of the apartments are illustrated in defendants Exhibits Troutman 24, 20, 18, 17, 16, 10, 32 through 37;

18. That the defendant began using the structure on Lot 6 September 1, 1974 (Sic: '1974' should be '1969') for office purposes; that plaintiff Thomas Hawthorne and wife, Charlotte M. Hawthorne executed documents entitled 'Release and Covenant Not to Sue' on the 29th day of October, 1975, allowing the use of Lot 4 Block 7 for a branch office of Mutual Savings and Loan Association subject to certain conditions on the part of Mutual Savings and Loan Association as set out in Defendants' Exhibit 1."

Based on its findings of fact, the court made the following conclusions of law:

"1. That the action was brought within three years after the first non-residential use of the defendants' property, i.e., Lot 6 of Block 7 and that the Statute of Limitations is not applicable;

2. That the conjunction of the racial restriction and the residential restriction in the deed of the defendant's property are separable, the racial restriction being unenforceable and moot, and the general intent of this paragraph, from a reading of the four corners of the document, indicates the intention of the grantor to be the establishment of a residential restriction;

3. That from a reading of the deeds from George Stevens [sic] and the Stevens [sic] Company conveying the lots in Blocks 7 and 9 of Myers Park and from the four corners of each and every deed, it was the intent of George Stevens [sic] and Stevens [sic] Company to develop the lots in Blocks 7 and 9 in accordance with a general plan or uniform scheme of restrictions and that plan or scheme being for the establishment of single-family residences;

4. That the construction of the public library on Lot 10-A of Block 7, the construction of the apartments on Lots 8 and 9 of Block 7 were both deviations from the general plan and scheme for the development and improvement of Blocks 7 and 9 and that these deviations or changes are of a substantial, fundamental and radical nature from the intent of the restrictions, and that such deviations or changes destroy the purposes of said restriction;

5. The documents signed by plaintiffs Hawthorne in 1975 constitute a waiver of their respective rights;

6. That Block 9 of the subject subdivision is separable from Block 7 and as such is not included or covered in this judgment."

From entry of judgment denying their prayer for injunctive relief, plaintiffs appealed, and defendants cross-appealed.

*Ruff, Bond, Cobb, Wade & McNair, by Hamlin L. Wade, for plaintiff appellants.*

*Helms, Mulliss & Johnston, by Fred B. Helms and Robert B. Cordle, for defendant appellees.*

ERWIN, Judge.

[1] Defendants' contention that plaintiffs' action is barred by the applicable statute of limitations is without merit. Plaintiffs filed suit to enforce a restrictive covenant. A restrictive covenant is a servitude, commonly referred to as a negative easement, *Craven County v. Trust Co.,* 237 N.C. 502, 75 S.E. 2d 620 (1953), and an easement is an incorporeal hereditament. *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697 (1925). G.S. 1-50(3) requires that an action for injury to any incorporeal hereditament be brought within six years. Plaintiffs' action was clearly brought within this period.

[2] Defendants' contention that plaintiffs are barred from enforcing the restrictive covenant, regardless of the existence of a general scheme of development, because they are not adjoining lot owners is without merit.

In ascertaining the enforceability of restrictive covenants by persons not party thereto, it must be determined whether the grantor intended to create a negative easement for their benefit. *See Lamica v. Gerdes,* 270 N.C. 85, 153 S.E. 2d 814 (1967); *Property Owners' Assoc. v. Current and Property Owners' Assoc. v. Moore,* 35 N.C. App. 135, 240 S.E. 2d 503 (1978).

In a deed executed on 23 November 1911, the Stephens Company conveyed Lot 5 of Block 7 with the following convenant: "The foregoing restrictions and covenants are substantially similar to those contained in deeds to adjoining lot owners and are for the mutal [sic] protection of such lot owners." Defendants' deed to Lot 6 of Block 7 from George Stephens was executed on 1 January 1912 and contained the same covenant. Their deed to Lot 7 of Block 7 recited: "It is expressly understood and agreed by the parties hereto that all of the foregoing covenants, conditions and restrictions, which are for the protection and general welfare of the community, shall be covenants running with the land." When Block 9 of the subdivision was developed, the deeds retained the same covenant stated in defendants' deed to Lot 7 of Block 7.

From the various language stated in the respective deeds, it is clear that the grantors intended the covenants to be enforceable by all the lot owners in Blocks 7 and 9, not just the adjoining lot owners. To find otherwise would run counter to the interest of the court and the developers in the orderly development of land. Here, the respective grantors inaccurately used the word *adjoining* to mean *nearby*. The covenant was for the mutual protection of those lot owners nearby.

[3] Defendants argue that the lot owners in Block 9 should not be allowed to enforce restrictive covenants in Block 7. Whether lot owners in Block 9 are entitled to enforce restrictive covenants on lot owners in Block 7 is dependent largely upon whether the developers of the property treated and dealt with the two areas as a single unit and intended the restrictive covenants, easements, to cover both tracts, or whether the two blocks were treated and dealt with as separate, independent units, with intent of the developers and purchasers that the restrictions be limited to each block. *Craven County v. Trust Co., supra.*

Four factors of central importance in determining whether divisional or single unit development was intended are: (1) the way in which the land in question is platted; (2) the scope of any provision for altering the restrictions imposed; (3) the express limitations on the extent of the restrictions imposed by the conveyance; and (4) the similarity of restrictions between subdivisions. 52 Cornell Law Quarterly 611, 613 (1967).

Blocks 7 and 9 are platted together. The restrictions are said to be "for the mutual protection" of *adjoining* — nearby lot owners, and "for the protection and general welfare of the community." The restrictions contained in the deeds in Blocks 7 and 9 are substantially similar, although not identical. These crucial factors impel us to hold that Blocks 7 and 9 were treated and dealt with by the developers and purchasers as one single unit. We hold that lot owners in Block 9 are proper parties to enforce the restrictive covenant.

[4] Defendants contend that plaintiffs are barred from enforcing the restrictive covenants, because: (1) the racial restriction in the covenant limiting the properties — Lots 6 and 7 to occupancy and ownership by whites only makes the limitation to residential use unenforceable; (2) a radical and fundamental change in the neigh-

borhood has occurred; (3) rezoning of the neighborhood makes enforcement of the covenant inequitable; and (4) plaintiffs have waived their rights to enforce the covenant. We disagree.

Racial restrictive covenants prohibiting the sale or use of real property by a particular racial group are unenforceable today either in equity, *Shelley v. Kraemer*, 334 U.S. 1, 92 L.Ed. 1161, 68 S.Ct. 836, 3 A.L.R. 2d 441 (1948), or at law in an action for damages. *Barrows v. Jackson*, 346 U.S. 249, 97 L.Ed. 1586, 73 S.Ct. 1031 (1953). Similarly, all racial discrimination, private as well as public, in the sale or rental of property is forbidden. *Jones v. Mayer Co.*, 392 U.S. 409, 20 L.Ed. 2d 1189, 88 S.Ct. 2186 (1968). Nevertheless, the limitation to residential use is valid. The proper remedy, when a conveyance is made which contains such void covenants, is to give full effect to the conveyance but read out the invalid restriction. *See Terry v. Elmwood Cemetery*, 307 F. Supp. 369 (N.D. Ala. 1969); J. Webster, Real Estate Law in North Carolina § 346 (1971).

Defendants' contention that a radical and fundamental change in the neighborhood precludes the enforcement of the restrictive covenant is meritless.

The only changes that the trial court found had occurred in the neighborhood were the construction of a branch of the Charlotte-Mecklenburg County Public Library and the construction of some multi-unit apartment buildings. We note that the record reveals that plaintiffs, the Hawthornes and Warrens, had also waived enforcement of the restrictions as to another lot in Block 7.

[5, 6] In *Cotton Mills v. Vaughan*, 24 N.C. App. 696, 212 S.E. 2d 199 (1975), we held that the use of four of sixty-two lots subject to residential covenants for a snack bar, automobile repair shop, used-car lot, and a fabric shop did not constitute such a radical or fundamental change in the character of the community as to warrant removal of the residential restrictions. In the case at hand, practically all the residents of Blocks 7 and 9 joined in waiving enforcement restrictions to allow for construction of the public library, including defendants' predecessors in interest. The construction of the apartment buildings was not in violation of the covenant restricting the land to residential use. *Huntington v. Dennis*, 195 N.C. 759, 143 S.E. 521 (1928); *Delaney v. VanNess*, 193

N.C. 721, 138 S.E. 28 (1927). Although the Hawthornes and War-rens waived their right to enforce the restrictive covenants as to Lot 4 of Block 7, they expressly reserved the right to enforce the restrictions as to other lots in Block 7. Their waiver of rights was a matter of contract. The construction of the public library and the waiver of enforcement of the restrictions were not such a radical and substantial change in the neighborhood so as to defeat the purpose of the restriction, *see Building Co. v. Peacock,* 7 N.C. App. 77, 171 S.E. 2d 193 (1969), and the Hawthornes' and War-rens' execution of the waiver agreement did not estop them from enforcing the covenant against defendants.

Defendants' contention that the change in zoning makes it in-equitable to enforce the restrictive covenant is without merit. Suffice it to say that a mere change in a zoning ordinance does not nullify or supersede a valid restriction on the use of real prop-erty, *Tull v. Doctors Building, Inc.,* 255 N.C. 23, 120 S.E. 2d 817 (1961); *Mills v. Enterprises, Inc.,* 36 N.C. App. 410, 244 S.E. 2d 469, *dis. rev. denied,* 295 N.C. 551, 248 S.E. 2d 727 (1978); *Building Co. v. Peacock, supra,* and the trial court properly excluded evidence of changes occurring outside the community. *Brenizer v. Stephens,* 220 N.C. 395, 17 S.E. 2d 471 (1941); *Mills v. Enterprises, Inc., supra.*

In its conclusions of law, the trial court found a substantial, fundamental, and radical change in the community, a waiver of the Hawthornes' rights, and that Block 9 of the subject subdivi-sion was separable from Block 7. Based on the foregoing text of our opinion and the trial court's own findings of fact, we hold that issuance of injunctive relief was appropriate. We need not con-sider plaintiffs' other assignments of error.

The judgment entered below is

Reversed and remanded.

Judges CLARK and WELLS concur.