JOHN B. HATFIELD, JR. AND KATHRYN K. HATFIELD v. JEFFERSON STANDARD LIFE INSURANCE COMPANY, INC.

No. 8618SC483

(Filed 5 May 1987)

1. Easements § 4— alleyways—action to enforce easement—summary judgment for plaintiffs proper

The trial judge correctly granted summary judgment for plaintiffs in an action for injunctive relief to reopen two alleyways in downtown Greensboro where both parties derived title from a common grantor, the original deed in defendant's chain of title showed easements in the alleyways, the original deed in plaintiffs' chain of title conveyed title to both their lots and the adjoining alleyways, and subsequent deeds each contained a grant of an easement. There was no material dispute on the facts; the only question was whether the deeds granted plaintiffs an easement over the alleyways.

2. Easements § 8.4— alleyway—other means of access—easement kept open

Where plaintiffs were granted an easement over alleyways by deed, it was not unreasonable for the court to require that the alleyways be kept open, even though plaintiffs had other means of access to adjacent streets.

3. Easements § 8.2— alleyways—right to enforce easement—argument that defendant planned a better use for the property

The trial court did not err by granting summary judgment for plaintiffs in an action for injunctive relief to reopen two alleyways where both parties had easements and defendant argued that plaintiffs were not entitled to enforce their rights because defendant's plans constituted a better use of the property without reducing the value of plaintiffs' property.

4. Equity § 2— injunctive action to enforce easement—laches

Plaintiffs were not barred by the doctrine of laches from asserting their easement rights in two alleyways closed by defendant where plaintiffs filed for a mandatory injunction within fourteen days of the erection of the walls and completion of the impediments and the wall and plant areas erected by defendant were very unsubstantial.

5. Rules of Civil Procedure § 15.1— injunctive action to enforce easements—motion to amend answer denied—no abuse of discretion

The trial court did not abuse its discretion in an action to enforce easement rights in two alleyways by denying defendant's motion to amend its answer where defendant wanted to assert unclean hands in that plaintiffs had without justification rejected defendant's offer of settlement. N.C.G.S. § 1A-1, Rule 15(d).

APPEAL by defendant from *Long, Judge.* Judgment entered 12 December 1985 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 November 1986.

*Hatfield & Hatfield by John B. Hatfield, Jr., for plaintiff appellees.*

*Smith Helms Mulliss & Moore by Bynum M. Hunter and Lynn G. Gullick for defendant appellant.*

COZORT, Judge.

This appeal concerns easement rights to two alleyways in downtown Greensboro. Both plaintiffs and defendant claimed easement rights to the alleyways. When defendant erected impediments to close off portions of the alleyways, plaintiffs filed suit requesting injunctive relief to reopen the alleyways. The trial court granted summary judgment for plaintiffs, ordering defendant to remove the impediments. Defendant appeals, and we affirm. The facts follow.

Plaintiffs own lots numbered one through three of a block of West Washington Street in downtown Greensboro. Defendant owns lots numbered four through thirteen on West Washington Street and South Greene Street in the same block as plaintiffs' lots. The lots are part of a subdivision properly recorded in the Guilford County Registry. The disputed easement in this appeal involves two alleyways: (1) a fifteen-foot wide alley behind lots numbered one through eight running parallel to West Washington Street and connecting with (2) a twelve-foot wide alley running parallel to South Greene Street. The alleyways provide ingress, egress, and regress from the rear portion of each lot (one through thirteen) to West Washington Street and Federal Place.

Both parties derived title from a common grantor, Summit Avenue Building Company (hereinafter "Summit"). In a deed dated 20 May 1926 Summit conveyed one portion of its property, including lots numbered one through fifteen and the adjoining alleyways to National Investment & Realty Corporation (hereinafter "National Investment"), and this deed was recorded on 14 August 1926. In a separate deed dated 20 May 1926 another portion of the property, known as the "Theatre Site," was conveyed in a separate deed to National Amusement Corporation (hereinafter "National Amusement") and this deed was recorded on 13 August 1926.

The deed from Summit to National Investment conveyed the ownership of both the disputed alleyways to National Investment.

The deed to National Amusement conveyed easement rights in both the disputed alleyways for the use of the "Theatre Site."

Plaintiffs, owners of lots numbered one through three, trace their easement rights in the alleyways through chain of title. After the original conveyance of lots numbered one through fifteen from Summit to National Investment, lots numbered one through three were conveyed by National Investment to W. Y. Preyer on 15 April 1927. This deed contains easement rights in the alleyways expressed as:

> Together with the right of ingress, regress and egress over and along a 12 foot alley leading from West Washington Street and a 15 foot alley leading from South Ashe Street as shown on aforesaid map.

The same three lots with identical easement provisions were conveyed by W. Y. Preyer and his wife, Mary N. Preyer, on 31 October 1957 to Ralph Price. On 28 June 1968 Ralph Price and his wife, Janie P. Price, conveyed lots numbered one through three with the identical easement language to Armistead W. Sapp, Jr., and his wife, Ada Jane Sapp. The plaintiffs derived title to lots numbered one through three in a 1 July 1981 conveyance by Ada Jane Sapp (widow). This deed contained the language, "This conveyance is made subject to restrictions and easements of record . . . ."

The complete chain of title for defendant is not in the record. Defendant obtained title to lots numbered four through thirteen with easement rights identical to those of plaintiffs in a 28 February 1983 conveyance. Defendant also obtained title to the "Theatre Site," with easements in the alleyways, in a 1943 conveyance. Defendant conveyed the "Theatre Site" on 14 February 1977 to the United Arts Council of Greensboro, Inc. (hereinafter the "Council"), containing the perpetual easement language.

In June of 1983 the defendant and the Council agreed that defendant would close the twelve-foot wide alley and part of the fifteen-foot wide alley. The defendant further agreed to open a new twelve-foot wide alley through lot four to give the Council access to West Washington Street. The new alley is located next to plaintiffs' property. Plaintiffs were not notified of these negotiations and were never consulted by the defendant.

Hatfield v. Jefferson Standard Life Ins. Co.

On 21 September 1983, the defendant closed the alleyways by erecting concrete walls and areas for plants to enclose lots numbered four through thirteen. It had purchased those lots primarily for a parking lot for its employees. On 5 October 1983 plaintiffs filed suit requesting a mandatory injunction to have the alleyways opened. On 9 October 1985 plaintiffs moved for summary judgment.

Defendant submitted an offer of judgment on 12 November 1985 which plaintiffs did not accept. On 12 November 1985, defendant also filed a motion to amend its answer to allege the defense of "unclean hands." This motion was denied by the trial court at the summary judgment hearing on 13 November 1985.

Plaintiffs' motion for summary judgment was also heard on 13 November 1985. On 12 December 1985 the trial court filed an order granting summary judgment for plaintiffs.

On appeal defendant raises five assignments of error: (1) that summary judgment was improper because there is no evidence that the plaintiffs have the right of ingress, egress, or regress over the twelve-foot alley or the fifteen-foot alley; (2) that summary judgment was improper because even if plaintiffs have rights in the alleyways, it was unreasonable of the trial court to require defendant to keep the alleyways open; (3) that summary judgment was improper because plaintiffs have an adequate remedy at law; (4) that summary judgment was improper because plaintiffs' rights are barred by the doctrine of laches; and (5) that the trial court erred in denying defendant's motion to amend its answer to allege the defense of "unclean hands."

We first address defendant's arguments concerning the granting of summary judgment for plaintiff. Rule 56(c) of the North Carolina Rules of Civil Procedure provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). "The moving party has the burden of clearly establishing by the record properly before the court the lack of any triable issues of fact." *Communities, Inc. v. Powers, Inc.*, 49 N.C. App. 656, 660, 272 S.E. 2d 399, 402 (1980).

[1] Defendant first argues that summary judgment for plaintiffs was improper because there was no evidence plaintiffs had any right of ingress, egress, or regress over the twelve-foot or fifteen-foot alleyways. Defendant argues that the original 1926 deeds from Summit show that easement rights in the alleyways were only for the benefit of the owners of the "Theatre Site." While we agree that the owners of the "Theatre Site" have an easement in the alleyways, we disagree with defendant's assertion that they are the only ones who have this easement right.

In two separate deeds dated 20 May 1926, Summit conveyed two parcels of property. One parcel, known as the "Theatre Site," was conveyed to National Amusement. The pertinent easement language in the deed is as follows:

> Together with a perpetual easement in, along, over, under and through the fifteen foot alley running along part of the northern boundary of the above-described lot, and leading out to South Ashe Street, [now known as "Federal Place,"] and twelve foot alley extending from the northern boundary of this property northwardly to West Washington Street, and an alleyway five (5) feet by twelve and two one-hundredths (12.02) feet long at the northeast corner of the above-described lot, all as shown on said map or plat, for the purposes of *ingress, egress* and *regress*, and for electric, gas, water and sewer lines, fire escapes, exits, and other purposes, or such of said uses as grantees, their successors or assigns, from time to time may desire the use of said alleys. (Emphasis added.)

The other deed of the same date conveying lots numbered one through fifteen to National Investment reads, in pertinent part, as follows:

> [S]ame being all of lots One (1) to fifteen (15), inclusive *and adjoining alleyways*, and all of lots twenty-four (24) to thirty-one (31), inclusive, as shown on map of National Investment and Realty Corporation, to be filed in office of Register of Deeds of Guilford County at the time this deed is filed. See Plat Book 7, Page 44. Subject, however, to the easement rights and privileges in and to a fifteen-foot alley leading along part of the northern margin of Theatre site and out to South Ashe Street, and in and to a twelve-foot alley leading from Theatre

site northwardly to West Washington Street, and an alley-
way five (5) feet wide by twelve and two one-hundredths
(12.02) feet long at the northeast corner of lot designated
Theatre site, this day granted by grantor here in [*sic*] to Na-
tional Amusement Corporation in deed for said Theatre site.
(Emphasis added.)

We agree with defendant that easements in the alleyways were
not granted with the conveyance to National Investment. How-
ever, there was no need to grant an easement to National In-
vestment because the deed conveyed title to both the lots *and* the
adjoining alleyways. When National Investment later conveyed
the lots to other parties, each deed contained a grant of an ease-
ment over the twelve-foot and fifteen-foot alleyways. This grant
of an easement continued through the chain of title up until the
parties in this case obtained title. Plaintiffs own lots numbered
one through three; defendant owns lots numbered four through
thirteen; and the Council owns the "Theatre Site." All have ease-
ments granted through their deeds for the twelve-foot and fifteen-
foot alleyways.

In *Andrews v. Lovejoy*, 247 N.C. 554, 556, 101 S.E. 2d 395,
397 (1958), the Supreme Court held when the owner of a tract of
land abutting a highway sells a portion of the property not adja-
cent to the highway by deed expressly granting the right of in-
gress and egress to the highway, the deed creates an easement
over the land retained, the deed being under seal and duly re-
corded. In the case below, National Investment had title to the
alleyways and lots. It sold the lots and granted easements over
the alleyways to the adjacent streets. All of the deeds were under
seal and duly recorded. The deeds gave defendant and plaintiffs
an expressly granted easement appurtenant in the alleyways. The
Council also obtained an easement in its deed from defendant
which originally came from National Amusement.

Therefore, the trial judge was correct in granting summary
judgment for the plaintiffs based on their right as a matter of law
to have ingress, egress, or regress over the twelve-foot or fifteen-
foot alleyways. There was no material dispute raised by defend-
ants to the facts; the only question was whether the deeds
granted plaintiffs an easement over the alleyways. We find the
deeds granted an easement, and we hold summary judgment for
the plaintiffs was correctly granted.

[2] Defendant's second assignment of error alleges that even if plaintiffs have rights in the alleyways it was unreasonable of the trial court to require the alleyways be kept open. Defendant argues the ruling is unreasonable because the plaintiffs have sufficient access to their property without the alleyways in question.

In *Hensley v. Ramsey*, 283 N.C. 714, 733, 199 S.E. 2d 1, 12 (1973), the Supreme Court stated: "When an easement is created by a deed, the existence or nonexistence of other access to the highway does not affect the easement." In the case at bar we find that plaintiffs' easement was granted by deed and that it does not matter if plaintiffs have other means of access to the adjacent streets. Plaintiffs have the right to exercise their easement. Defendant's second assignment of error is overruled.

[3] The third assignment of error alleged by defendant is that the trial court erred in granting summary judgment because the plaintiffs have an adequate remedy at law. In its brief, defendant relies on *Winterville v. King*, 60 N.C. App. 730, 299 S.E. 2d 838 (1983), citing the following language from the opinion:

> In its eagerness to prove that defendants dedicated at least a portion of their property to be used as a public street, the plaintiff seems to have lost sight of the rule that a permanent injunction *will not lie where there is a full, adequate, and complete remedy at law* and without a determination that the applicant will suffer *irreparable injury* from the acts and conduct of the party to be enjoined. (Citations omitted.)

*Id.* at 734, 299 S.E. 2d at 841 (emphasis added). We disagree with defendant and find the plaintiffs are not required to accept monetary damages.

The question posed by this case is whether plaintiffs have a right to keep the alleyways open. An exchange between the trial court and defendant's attorney at the summary judgment hearing demonstrates why defendant's reliance on *Winterville* is misplaced.

> THE COURT: You keep suggesting equitable remedy. But to relegate the plaintiff property owners to remedies at law; that is, damages, would be to grant to the defendant the right of imminent [*sic*] domain.

And I don't — as far as I know, it is not such a corporation or entity that has a right of imminent [sic] domain.

MR. HUNTER: No. I'm not contending that we have the right of imminent [sic] domain. I'm proceeding strictly on equitable principles.

THE COURT: Do you argue that you are entitled, assuming that the plaintiffs have interest in it, do you argue that you are entitled to take it and require the plaintiffs to accept damages?

MR. HUNTER: Well, —

THE COURT: That is nothing short of imminent [sic] domain. And the law says that imminent [sic] domain is not a private right.

In *Winterville*, this Court was faced with a fact situation where the plaintiff, the Town of Winterville, did have the power of eminent domain. Winterville sought an injunction to stop defendants from obstructing a street. In finding the injunction improperly granted by the trial court, we stated that the remedies at law available to the plaintiff included the filing of criminal charges against defendant. *Id.* at 735, 299 S.E. 2d at 841.

Obviously, the case at bar is a completely distinguishable situation, with one party contesting the right of a second party to use of the alleyways in which both parties have an easement. After the trial court's remarks we have quoted above, defendant's counsel argued to the court that while the defendant did not have the right of eminent domain, the plaintiffs should not be entitled to equitable relief because the impediments constructed by defendant, when viewed with the new alley constructed by defendant, did not decrease the value of plaintiffs' property. He argued to the trial court, and he argues here, that plaintiffs are not entitled to enforce their rights because defendant's plans constitute a better use of the property without reducing the value of plaintiffs' property. Our research has found no authority for the proposition that a private property owner must give up his interests in an easement because a second property owner wants to pay him damages for taking away that easement so that a more economical use of the second owner's property can be pursued. We de-

cline to so hold. The defendant's third assignment of error is not sustained.

[4] Defendant's fourth assignment of error alleges that summary judgment for plaintiffs was error because plaintiffs' rights to the twelve-foot and fifteen-foot alleyways were barred by the doctrine of laches. Defendant argues that plaintiffs did not assert their rights to the alleyways in time because they waited until defendant had made significant improvements to the entire area before filing for a mandatory injunction, instead of filing for an earlier temporary restraining order. In response, plaintiffs argue that the motion for a mandatory injunction was filed within fourteen days of the erection of the walls and completion of the impediments.

In *East Side Builders v. Brown*, 234 N.C. 517, 67 S.E. 2d 489 (1951), the doctrine of laches is stated as follows:

"Laches is such delay in enforcing one's rights as works disadvantage to another. . . . To constitute laches a change in conditions must have occurred that would render it inequitable to enforce the claim." 30 C.J.S., section 112, page 520, *et seq.*

*Id.* at 521, 67 S.E. 2d at 401.

The wall erected by defendant was very unsubstantial, one foot of concrete underground and one foot above ground. There were also enclosed plant areas. We find none of these changes to be substantial enough to invoke the doctrine of laches. The fourteen-day period between the completion of the impediment and the filing of the motion for a mandatory injunction with the Superior Court of Guilford County does not constitute the type of delay the doctrine of laches was created to remedy. The filing of plaintiffs' motion for a mandatory injunction to prevent the closing of the alleyways was within a reasonable time.

[5] Defendant's final assignment of error contends the trial court committed reversible error in denying defendant's motion to amend its answer. Defendant alleges it should have been allowed to amend its answer to assert the defense of "unclean hands." The defendant wanted to amend its answer (1) to show that plaintiffs had rejected defendant's offer of judgment, which would have given plaintiffs an easement in a new alleyway constructed

by defendant in exchange for plaintiffs giving up their rights in the original alleyways; and (2) that plaintiffs' rejection of the offer was unjustified. Defendant further argues that the trial judge is required to set out specific reasons for not allowing defendant to amend its answer through a supplemental pleading under N.C. G.S. § 1A-1, Rule 15(d).

Plaintiffs respond that the motion to amend set forth by defendant alleges settlement proposals and offers, none of which raises a material issue of fact that would have altered the outcome of the case. Plaintiffs also argue that the trial judge, as a trier of fact, cannot consider settlement negotiations.

The ruling on defendant's motion to amend its answer is within the discretion of the trial court. The test for the trial court's abuse of discretion has been set out as follows:

> A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.

*White v. White*, 312 N.C. 770, 777, 324 S.E. 2d 829, 833 (1985). We find no abuse of the trial court's discretion denying defendant's motion to amend.

The order granting summary judgment for plaintiffs is

Affirmed.

Chief Judge HEDRICK and Judge MARTIN concur.