PIERCE BUTLER IRBY, III, AND WIFE, CINDY BAKER IRBY v. GAIL WILKINS FREESE F/K/A GAIL BRINN WILKINS, AND JOSEPH P. CLARK, TRUSTEE FOR TRULIANT FEDERAL CREDIT UNION

No. COA09-1224

(Filed 17 August 2010)

**1. Laches— declaratory judgment—violation of restrictive covenants—prompt and undue delay**

The trial court erred in a declaratory judgment action by concluding that plaintiffs' claims to enforce certain restrictive covenants and seeking damages for violations of those restrictions was barred by the equitable defense of laches. Plaintiffs acted promptly and without undue delay upon learning of the existence of the grounds for their claim. Although compliance

IRBY v. FREESE

[206 N.C. App. 503 (2010)]

with the statute of limitations is not determinative on the issue of laches, the fact that plaintiffs filed their complaint well within the applicable statute of limitations further supported their position.

### 2. Appeal and Error— additional issues not addressed— mootness

Plaintiff's additional arguments in a declaratory judgment action were not addressed based on the Court of Appeals' holding that their claim was not barred by laches.

Appeal by Plaintiffs from judgment entered 4 May 2009 by Judge Jesse B. Caldwell, III in Superior Court, Mecklenburg County. Heard in the Court of Appeals 11 February 2010.

*Kenneth T. Davies for Plaintiffs.*

*K&L Gates LLP, by Roy H. Michaux, Jr., for Defendants.*

STEPHENS, Judge.

This matter arises out of a 12 February 2008 action brought by Plaintiffs to enforce certain restrictive covenants encumbering Defendant Gail Wilkins Freese's ("Freese") property and seeking damages for violations of those restrictions. Following a bench trial, on 4 May 2009, the trial court entered judgment denying Plaintiffs' claims and dismissing Plaintiffs' action with prejudice, concluding that Plaintiffs' action was barred by the equitable doctrine of laches. For the reasons set forth below, we reverse and remand.

### I. Factual Background and Procedural History

Pierce Butler Irby, III and his wife, Cindy Baker Irby ("Plaintiffs"), filed a complaint on 12 February 2008 seeking a declaratory judgment that restrictive covenants encumbering the neighboring residential lot owned by Freese and Joseph P. Clark, as Trustee for Truliant Federal Credit Union (collectively, "Defendants"), were valid and enforceable. Plaintiffs also sought damages for Defendants' alleged breach of such restrictions, as well as preliminary and permanent injunctive relief prohibiting Freese from further construction in breach of the covenants and requiring Freese to reconstruct the residence on the lot to comply with the covenants.[1] Defendants filed an answer on 15 April 2008 asserting affirmative defenses, including the

---

1. At trial, however, Plaintiffs elected to pursue only injunctive relief and offered no evidence of monetary damages.

equitable defense of laches. On or about 11 December 2008, Plaintiffs filed an amended complaint adding allegations that Freese violated side setback restrictions, in addition to violating the front setback restrictions alleged in the original complaint. Defendants filed an answer to the amended complaint on 5 February 2009 reasserting laches as a defense.

This matter came on for trial during the 9 February 2009 Civil Session of Mecklenburg County Superior Court, the Honorable Jesse B. Caldwell, III presiding. The findings of fact contained in the trial court's judgment are not in dispute and are summarized below. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (Findings of fact which are not contested are "presumed to be supported by competent evidence and [are] binding on appeal.").

Freese[2] is the record owner of a portion of Lot 5, Block 3B ("Freese Property") located at 717 Queens Road in the Myers Park neighborhood in Charlotte, North Carolina. Plaintiffs are the owners of Lot 7, Block 3B of Myers Park, which is located approximately 100 feet from the Freese Property.

Restrictive covenants (the "Restrictions") applicable to Lot 5 first appeared in a deed from The Stephens Company, recorded 17 May 1915. The Restrictions include a provision that "[n]o residence erected on the property shall be nearer the property line adjoining Queens Road than Fifty (50) feet, nor . . . nearer either of the side property lines than Fifteen (15) feet." Similar restrictions are applicable to all of the lots in Blocks 3A and 3B pursuant to a uniform scheme of development and run with the land. The deed to the Freese Property makes no reference to the Restrictions. Plaintiffs, however, were given a copy of deed restrictions applicable to their property at the time they purchased it.

In September 2007, Freese and her husband, Howard Freese (collectively, the "Freeses"), commenced construction of an addition to the east side of their home on Lot 5 consisting of a two-story living area and a garage with living area over it (the "Addition"). The Freeses did not have actual knowledge of the Restrictions when they began construction, and they did not consult with an attorney or an architect. Grading and ground level site work on the Addition took place in October and November 2007, and vertical construction was commenced on 1 December 2007. As of the end of November 2007,

---

2. Freese's former name, Gail Brinn Wilkins, is the name on the recorded deed.

the Freeses had expended $180,489.57 in connection with construction of the Addition.

The vertical framing on that portion of the Addition in front of the existing house reflected a structure that was obviously closer than 50 feet to Queens Road and was observed by Plaintiffs at least by the middle of December 2007. Vertical construction of the Addition was also noticed by Dr. Tom Masters, the president of the Myers Park Homeowners Association ("HOA") at the time, in December 2007.

Plaintiff Pierce Irby ("Irby") contacted the Charlotte City Planning & Zoning Office and the Building Inspections Department, and learned in early January 2008 that the Addition conformed to all zoning requirements and that he should consider investigating any violation of any restrictive covenants that may be applicable to the Freese Property. On 14 January 2008, Anne Schout ("Schout") of the HOA notified Irby that properties in Myers Park had deed restrictions that were "policed" by other neighbors in the subdivision and that each resident in the subdivision could bring an action to make the offending property owner comply with the deed restrictions. These restrictions were found in the original deeds generated in the sale of the property from the developer to the first owners. On 17 January 2008, Irby learned that the restrictions applicable to the Freese Property included a front setback requirement of 50 feet and a side setback requirement of 15 feet, and that the Addition was "definitely in violation of the front setback with their Addition started in the front yard."

Between 17 January and 15 February 2008, the Board of Directors of the HOA agreed that the HOA would fund a portion of this litigation. During the last week of January 2008, Plaintiffs first met with an attorney and Schout to discuss their right to enforce the Restrictions on the Freese Property. They were advised that they had the right to enforce the Restrictions and agreed to bring the current action. This was the first time Plaintiffs had sufficient knowledge to make an informed decision on their available remedies and how to proceed.

Even though the Addition clearly was in violation of the front setback Restrictions, the Freeses did not have actual notice that the Addition was objectionable or that it might be in violation of the Restrictions until Plaintiffs' complaint was served on 15 February 2008. At that time, the project was completely dried in, the interior framing had been completed with the stairwell and walls in place, and the electrical and rough plumbing were complete. The heating system

and duct work were in place, and the garage portion of the Addition and the living area above were within two weeks of completion. Work was on schedule, and the residential portion was to be completed by the end of April 2008.

From 1 December 2007 to 15 February 2008, the Freeses had expended $305,087.56 on the Addition. Another $115,000.00 was due by 1 March 2008 for work under contract and materials already purchased. On 29 March 2008, Plaintiffs' counsel and representatives of the HOA met with the Freeses and Defendants' attorney. Plaintiffs and the HOA observed that the Addition on the east side of Lot 5 appeared to be closer than 15 feet to a wall located across the rear of the adjoining Lot 4. Plaintiffs' counsel requested the right to have the Freese Property surveyed, which was granted. The survey was delivered to Plaintiffs on or about 4 May 2008 and showed that the Addition was slightly over 20 feet from Queens Road and within six to seven feet from the rear line of Lot 4 in Block B. The survey also reflected that the Addition conformed to the setbacks imposed on the Freese Property under the applicable City of Charlotte zoning regulations.

In a letter to Defendants dated 20 May 2008, Plaintiffs alleged a side yard violation under the Restrictions. Approximately seven months later, in December 2008, Plaintiffs sought and obtained leave to amend their complaint to assert an additional claim regarding the side yard setback violation. As of 20 May 2008, the contractor's work on the Addition was substantially complete, and as of 21 May 2008, the amount expended on the Addition totaled $504,418.12.

The living area above the garage and the garage portion of the Addition are parts of integrated electrical, plumbing, and HVAC systems, part of an integrated roof system, and portions of the living area extend slightly beyond the front wall of the original home, including an internal stairwell in the residential portion that cannot be moved and meet building code requirements. The garage structure and the living area above cannot be segregated from the remainder of the Addition due to the integrated components including the roof system, load bearing foundations, and the heating, cooling, electrical, and plumbing systems, all of which would have to be torn out and replaced at substantial expense.

The trial court concluded that although Freese had constructive notice of the Restrictions, Plaintiffs failed to act timely to notify Defendants of their concerns regarding the Addition after Plaintiffs knew or should have known that they had a legal right to object.

IRBY v. FREESE

[206 N.C. App. 503 (2010)]

Therefore, the trial court ruled that Plaintiffs' claim was barred by the equitable doctrine of laches. On 4 May 2009, the trial court entered judgment denying Plaintiffs' claim for injunctive relief and dismissing Plaintiffs' action with prejudice. From this judgment, Plaintiffs appeal.

## II. Standard of Review

"[W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). Where, as in the present case, the trial court's findings are not contested, the findings are "presumed to be supported by competent evidence and [are] binding on appeal." *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731. The trial court's conclusions of law are reviewable *de novo. Shear*, 107 N.C. App. at 160, 418 S.E.2d at 845.

## III. Equitable Defense of Laches

[1] Plaintiffs argue that the trial court erred in concluding that their claims are barred by the equitable defense of laches. Specifically, Plaintiffs contend they acted promptly to enforce their rights after becoming aware of their right to enforce the Restrictions against Defendants and that any delay was not unreasonable. We agree.

> To establish the affirmative defense of laches, our case law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case; however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*MMR Holdings, LLC. v. City of Charlotte*, 148 N.C. App. 208, 209-10, 558 S.E.2d 197, 198 (2001). The burden of proof is on the party who pleads the affirmative defense of laches. *Taylor v. City of Raleigh*, 290 N.C. 608, 622, 227 S.E.2d 576, 584 (1976).

It is undisputed in the present case that Plaintiffs became concerned about the construction of the Addition as early as 1 December 2007, but did not file their complaint until 12 February 2008. The determination of whether Plaintiffs' delay in acting on their concern was unreasonable so as to constitute laches depends on the facts and circumstances specific to this matter. *Teachey v. Gurley*, 214 N.C. 288, 294, 199 S.E. 83, 88 (1938) (The determination of what delay will constitute laches depends on the facts of each case.). We find instructive to our determination the holdings of the following cases:

In *East Side Builders v. Brown*, 234 N.C. 517, 67 S.E.2d 489 (1951), the defendants altered the construction of their single-family residence in late 1940 or early 1941 and converted it into a two-family residence in violation of applicable restrictions. *Id.* at 518-19, 67 S.E.2d at 489-90. The defendants claimed that they had no knowledge of the violations or that the violations were objectionable until served with plaintiffs' complaint seeking to enforce the restrictions on 12 September 1950. Our Supreme Court held that the plaintiffs' claim was not barred by laches despite the nine-to-ten-year delay in filing the complaint after defendants violated the restrictions. *Id.* at 521, 67 S.E.2d at 491-92. The Court concluded that because the plaintiffs did not learn of the conversion until after it was completed, the plaintiffs' delay in bringing the action did not prejudice defendants. Thus, the defendants "were not entitled to a judgment as of nonsuit on the ground of laches." *Id.* at 521, 67 S.E.2d at 491; *see Phoenix Ltd. P'ship v. Simpson*, —— N.C. App. ——, ——, 688 S.E.2d 717, 726 (2009) (Plaintiff's claim for specific performance of contract for defendants to sell certain real property to plaintiff was not barred by defense of laches based on plaintiff's three-year delay in asserting claim where defendants were prejudiced only by the increase in value of the property); *Sunbelt Rentals, Inc., v. Head & Enquist Equip., L.L.C.*, 174 N.C. App. 49, 63, 620 S.E.2d 222, 232 (2005) (Where plaintiff commenced an action for misappropriation of trade secrets on 13 July 2000 despite having knowledge of the defendants' improper conduct as early as November 1999, there was no unreasonable delay in bringing the action.); *but see Farley v. Holler*, 185 N.C. App. 130, 132, 647 S.E.2d 675, 678 (2007) (Owners of roadfront lots brought action against other subdivision residents, seeking relief in equity to reopen a different street in order to diffuse extra flow of traffic on road from new development; owners' claim was barred by laches after a nine-year delay in bringing the claim resulted in both a change in the condition of the property through $100,000.00 in repairs to the closed

street and a change in the relations of the parties through the changing of the owners of the lots in the subdivision; there was no justification, explanation, or reason for the delay, and lot owners were aware of the existence of their claim when the street was closed.).

In the present case, the trial court found the following in determining that Plaintiffs' delay was unreasonable: (1) that Plaintiffs reside approximately 100 feet from the Freese Property and observed construction in the front of the residence by the middle of December 2007; (2) that before 25 December 2007, Irby contacted the Charlotte City Planning & Zoning Office and the Building Inspections Department and learned that the Addition conformed to all zoning requirements and that he should consider investigating any violation of applicable restrictive covenants that may encumber the Property; (3) that on 14 January 2008, a representative of the HOA notified Irby that properties in Myers Park were subject to deed restrictions that are enforced through legal action by other neighbors in the subdivision; (4) that on 17 January 2008, Irby was advised that the Restrictions applied to the Freese Property, including the front and side setback requirements; (5) that between 17 January and 15 February 2008, the HOA agreed to fund a portion of this litigation; (6) that Plaintiffs first met with an attorney in January 2008; and (7) that the Freeses first received actual notice that the Addition was considered to be in violation of the Restrictions when served with Plaintiffs' complaint on 15 February 2008.

These facts do not support the trial court's conclusion that Plaintiffs' action was barred by laches. On the contrary, these facts establish that Plaintiffs acted promptly and without undue delay once learning of the existence of the grounds for their claim. *See MMR Holdings*, 148 N.C. App. at 210, 558 S.E.2d at 198 ("[T]he defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim."). In December 2007, after observing the construction in the front of the Freese Property that appeared to violate the front setback requirements, Plaintiffs took reasonable steps in order to ascertain what claim, if any, they may have against Defendants. Plaintiffs inquired with the Charlotte City Planning & Zoning Office, the Building Inspections Department, the HOA, .and their attorney, and filed their complaint, all in a matter of two months. Moreover, Plaintiffs filed their action within one month of receiving confirmation on 17 January 2008 that the Addition violated the setback requirements. Thus, any delay by Plaintiffs in bringing this action was not unreasonable.

In addition, our Courts have found that the statute of limitations applicable to a given action can be informative in answering the issue of whether delay in asserting an action is unreasonable. *See, e.g., Creech v. Creech,* 222 N.C. 656, 24 S.E.2d 642 (1943). In *Creech,* our Supreme Court stated that "the tendency is to measure laches by the pertinent statute of limitations wherever the latter is applicable to the situation and not to regard the delay of the actor to assert the right within that period effective as estoppel, unless upon special intervening facts demanding that exceptional relief." *Id.* at 663, 24 S.E.2d at 647. In *Teachey,* the Court stated:

> Whenever the delay is *mere neglect to seek a known remedy or to assert a known right,* which the defendant has denied, *and is without reasonable excuse,* the courts are strongly inclined to treat it as fatal to the plaintiff's remedy in equity, even though much less than the statutory period of limitations, if an injury would otherwise be done to the defendant by reason of the plaintiff's delay.

*Teachey,* 214 N.C. at 294, 199 S.E. at 88 (emphasis added).

The applicable statute of limitations in the present case is six years. N.C. Gen. Stat. § 1-50(a)(3) (2009) (The statute of limitations to bring an action for "injury to any incorporeal hereditament" is six years.); *see Hawthorne v. Realty Syndicate, Inc.,* 43 N.C. App. 436, 440, 259 S.E.2d 591, 593 (1979) (stating that statute of limitations for enforcing a restrictive covenant is six years). Although compliance with the statute of limitations is not determinative on the issue of laches, the fact that Plaintiffs filed their complaint well within the applicable statute of limitations provides further support for their position. We conclude that once Plaintiffs confirmed Freese's violation of the Restrictions and knew they had the legal right to enforce the Restrictions against Freese, Plaintiffs did not neglect to pursue their remedy and to assert their rights.

We hold that Plaintiffs' claim was not barred by the equitable defense of laches. Accordingly, we reverse and remand this matter to the trial court for a determination on the merits.

[2] Plaintiffs also contend that because Freese had constructive notice of the violations, she was a knowing wrongdoer and is barred from asserting an equitable defense by the doctrine of unclean hands. *See Hurston v. Hurston,* 179 N.C. App. 809, 814, 635 S.E.2d 451, 454 (2006) ("[H]e who comes into equity must come with clean hands;

otherwise his claim to equity will be barred by the doctrine of unclean hands."). Because of our holding that Plaintiffs' action is not barred by laches, we need not address Plaintiffs' remaining argument.

REVERSED and REMANDED.

Judges CALABRIA and GEER concur.