HILLCREST BUILDING COMPANY OF GOLDSBORO, N. C., INC v. C. W. PEACOCK

No. 698SC530

(Filed 31 December 1969)

1. Deeds § 20— subdivisions — uniform scheme or plan of development

   Determination of whether subdivision property was being developed and sold under a uniform scheme or plan of development must be made from an evaluation of the intent of the parties.

2. Deeds § 20— subdivisions — restrictive covenants — enforcement by owners

   When it appears that subdivision property was originally developed pursuant to a uniform scheme or plan, restrictive covenants are enforceable *inter se* by the owners of the lots in the subdivision, there being mutuality of covenants and consideration.

3. Deeds § 20; Parties § 1— enforcement of subdivision restrictive covenants — necessary parties

   Where there is a uniform scheme or plan, the owners of lots in the subdivision are necessarily interested parties in any action against or by another lot owner where a mutual covenant or obligation, such as a re-

strictive covenant for residential use, is in dispute, and all persons who have a right to enforce the covenants *inter se* or otherwise should be made parties.

**4. Deeds § 19— restrictive covenants — construction — enforcement**

While restrictive covenants are not favored and are to be strictly construed, they are enforceable if found not to be inequitable.

**5. Deeds § 19— restrictive covenants — servitude imposed**

The servitude imposed by a restrictive covenant is a species of incorporeal right which restrains the owner of the servient estate from making certain use of his property.

**6. Deeds § 19— restrictive covenants — negative easements**

Restrictive covenants create negative easements which are interests in the lands of others and are vested property rights.

**7. Deeds § 20— restrictive covenants — effect of zoning ordinance**

A valid restrictive covenant is neither nullified nor superseded by the adoption or enactment of a zoning ordinance, nor is the validity of the covenant thereby affected.

**8. Deeds § 20; Parties § 1; Vendor and Purchaser § 10— action involving subdivision restrictive covenants — necessary parties — other lot owners**

In this action for the specific performance of a contract to purchase land lying partially within a subdivision, plaintiff having agreed to convey the land free of restrictions on use, the trial court erred in determining that recorded restrictions limiting land within the subdivision to residential use could not be enforced against the portion of the land within the subdivision on the ground that fundamental changes within and without the subdivision had rendered such land unsuitable for residential purposes, where the subdivision was developed and sold under a uniform scheme or plan of development and the owners of other lots within the subdivision were not made parties to the action, since such other owners have the right to assert that enforcement of the restrictive covenant for residential uses has not become inequitable and that violations of the restrictions within the development do not amount to such a radical or fundamental change as to destroy the essential objects and purposes of the residential restrictions.

**9. Deeds § 20— subdivision restrictive covenants — residential use — limited non-residential use**

Limited uses for non-residential purposes within a subdivision do not estop owners of other lots within the subdivision from asserting their right against subsequent substantial violations of restrictive covenants limiting use of land within the subdivision to residential purposes.

APPEAL by defendant from *Hubbard, J.,* 1 September 1969 Civil Term, WAYNE Superior Court.

This is a civil action seeking specific performance of a contract

whereby the plaintiff agreed to sell and the defendant to purchase a certain tract of land in two parcels a part of which is located in the Hillcrest Farm Subdivision of Goldsboro, North Carolina, and a part of which is located outside of the subdivision and is referred to as the unsubdivided portion. The contract was conditioned upon the plaintiff being able to convey title with the land having unrestricted use and being zoned for business. The answer of the defendant alleged that these conditions had not been met.

The parties waived trial by jury and agreed that the presiding judge could find the facts upon an agreed statement of facts and exhibits. The stipulations and findings of fact are, in pertinent part, as follows. The tract of land to be conveyed is a portion of a farm originally owned by W. C. Spence on which he operated a dairy business from the year 1916 to the year 1942. The particular site fronts on Ash Street, formerly North Carolina Highway No. 10, now U.S. Highway 70 East. On the unsubdivided portion of the site to be conveyed, W. C. Spence, in 1928, erected a building for the treatment of raw milk and for the retail sale of milk, dairy products, ice cream, and other products. At that time the W. C. Spence home place was situated on the lot to be conveyed somewhat west of the dairy building. In 1951 W. C. Spence and his wife subdivided into lots a portion of Hillcrest Farm and designated upon said map Lots 1 through 7, Lots 28 through 35, and Lots 36 through 60, a copy of said map being duly recorded in the office of the Register of Deeds of Wayne County.

In 1951 W. C. Spence and wife executed an instrument containing restrictive covenants for Hillcrest Farm Subdivision which was recorded in the office of the Register of Deeds. A portion of said restrictive covenants is as follows:

"KNOW ALL MEN BY THESE PRESENTS: That W. C. SPENCE and wife, MARY J. SPENCE, do hereby covenant, stipulate and agree on behalf of themselves and to and with all persons, firms, and corporations who or which may hereafter acquire any lot or lots in the area embraced in the development known as 'Hillcrest Farm, W. C. Spence, Adamsville, N. C.,' said area including all the lands owned by W. C. Spence and embraced within the property lines shown on map thereof recorded in the Office of the Register of Deeds of Wayne County, North Carolina, in Map Book 3 at page 67. . . ."

"3. That no stores nor manufacturing establishments of any kind shall be erected on any lot, and no buildings, except for schools, churches and residential purposes and detached houses

for servants and the usual or necessary outhouses for the enjoyment of the said lot for residential purposes shall be erected."

Since the map and restrictive covenants were recorded in 1951, W. C. Spence and wife have conveyed a number of the subdivided lots within the property lines of Hillcrest Farm in which deeds they referred specifically to the restrictive covenants. They have conveyed a number of lots in Hillcrest Farm, in which deeds they referred to "valid restrictions of record," and they have conveyed a number of lots in Hillcrest Farm in which deeds they made no reference to any restrictive covenants.

In 1964 Mary B. Spence, widow of W. C. Spence, conveyed to W. C. Spence, Jr., and others the site proposed to be conveyed by two deeds in which there is no reference to any restrictive covenants or to any subdivision map in said deeds. In 1965 W. C. Spence, Jr., and others conveyed the site to Hillcrest Building Company of Goldsboro, N. C., Inc., with no references to restrictive covenants or subdivided map. On 20 January 1969, Hillcrest Building Company of Goldsboro, N. C., Inc., contracted to convey the site to C. W. Peacock, Agent.

In 1955 W. C. Spence and wife erected on Lots 1 and 2 of Hillcrest Farm Subdivision a commercial building for a retail florist with greenhouse attached. Plaintiff's Exhibit 5 shows Lots 1 and 2 to be located in the southwest corner of the intersection of Spence Avenue and Ash Street. Each of these lots are only 64 feet in depth. Every other lot in the subdivision has a depth of over 100 feet. By deed dated 10 November 1958, said Lots 1 and 2 were conveyed to Walton R. Thompson, the operator of the florist business. In 1958 Walton R. Thompson constructed an additional commercial building on Lot 2 and the buildings are now situated on the land and are in commercial use for a retail florist business and a sewing shop. It appears that this is the only non-residential use existing within the subdivision.

In 1955 W. C. Spence and wife constructed on the unsubdivided portion of the first parcel additional commercial buildings, to-wit: an office building on the west side of the retail dairy building and two office buildings on the south side of the dairy building. The former home place was converted to a commercial use for a convalescent and nursing home. At the time of the conveyance of the property to Hillcrest Building Company of Goldsboro, N. C., Inc., there was situated on the unsubdivided portion of the first parcel a building used for an interior decorator's store, a real estate office building, a building containing two beauty shops and the former

residence used for a convalescent nursing home and subsequently used for a church.

In 1956 Seymour Johnson Air Force Base was reactivated, the main access to the Base from Goldsboro being Ash Street on which this property faces. The main entrance to the Base is approximately 400 yards south of the intersection of Berkeley Boulevard and Ash Street, which intersection is approximately 400 yards east of the site proposed to be conveyed. The Base has a military population of 8,400 living on base and many military and civilian personnel living off base. It has been in continual operation since its reactivation in 1956.

In 1960 the City of Goldsboro zoned a portion of said first parcel, said portion having a frontage of 150 feet on Ash Street and a depth of 300 feet along Spence Avenue, as business property.

There has been considerable commercial development adjacent to the subdivision during the years since the Hillcrest Farm was subdivided in 1951, and particularly since the reactivation of Seymour Johnson Air Force Base in 1956.

The City of Goldsboro and the North Carolina Highway Commission are in the process of widening Ash Street to provide for five lanes of traffic, two lanes in each direction with a center turning lane. The State will acquire approximately 20 feet along the northern line of the site proposed to be conveyed for additional right of way.

In 1951 when W. C. Spence subdivided Hillcrest Farm the city limits of the City of Goldsboro were situated between Audubon Avenue and Oleander Avenue on Ash Street, approximately one mile west of the site proposed to be conveyed. The city limits, as extended on 7 March 1960, are now approximately 300 yards east of the intersection of Ash Street and Berkeley Boulevard.

From the stipulation of facts and findings of fact, the court made conclusions of law determining that the recorded restrictive covenants do not affect the unsubdivided portion of the site proposed to be conveyed and the portion of the subdivided area included in the parcel is not suitable or desirable for residential purposes because of the fundamental changes having taken place within and without the subdivision, such changes being of the magnitude which "would preclude a court of equity from enforcing any residential restrictive covenants . . ." It was further concluded that the second parcel is affected by the restrictive covenants but that the restrictions do not prohibit use of the parcel for a parking lot, the use as a parking

lot being such as would not invalidate the residential restrictions for the remainder of the subdivision.

The court determined that the plaintiff had fully complied with the contract and ordered the plaintiff to convey and the defendant to purchase the tract in controversy, the use of the tract being in compliance with the contract. The judgment was limited to the specific parcels to be conveyed and "shall not affect in any manner the restrictive covenants for any other portion of subdivided lots of Hillcrest Farm Subdivision or any other portion of Hillcrest Farm" shown on the recorded plat.

The defendant excepted to the foregoing findings of fact and conclusions of law and appealed.

*Bland and Wood by W. Powell Bland and J. Darby Wood for plaintiff appellee.*

*Smith and Everett by James N. Smith for defendant appellant.*

VAUGHN, J.

**[1, 2]**    The judgment from which the defendant appeals was specifically limited to the lots in controversy and was expressly not applicable to the restrictive covenants of other subdivided lots. It appears that the obvious intent of W. C. Spence, and wife, was that the subdivision should be developed and sold under a uniform scheme or plan of development. Such a determination must be made from an evaluation of the intent of the parties. *Long v. Branham,* 271 N.C. 264, 156 S.E. 2d 235. W. C. Spence, and wife, caused to be recorded an instrument setting forth the restrictive covenants applicable to Hillcrest Farm Subdivision. They provided for uniform restrictions in accord with a general scheme for the benefit of all lots in the subdivision allowing grantees of the owner of the original tract to enforce the restrictions. When it appears that the property was originally developed pursuant to a uniform scheme or plan, the covenants are enforceable *inter se* by the owners of the lots in the subdivision. *Lamica v. Gerdes,* 270 N.C. 85, 153 S.E. 2d 814; *Muilenburg v. Blevins,* 242 N.C. 271, 87 S.E. 2d 493. There is mutuality of covenants and consideration.

**[3]**    When there is a uniform scheme or plan, the owners of lots in the subdivision are necessarily interested parties in any action against or by another lot owner where a mutual covenant or obligation, such as a restrictive covenant for residential uses, is in dispute. All persons who have a right to enforce the covenants *inter*

*se* or otherwise should be made parties. *Muilenburg v. Blevins, supra.* We are of the opinion that *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344, is directly in point. There the action was also for specific performance of a contract of purchase and sale of real estate, the plaintiff being the owner of the lot to be conveyed and the purchaser defendant relying as a defense on the presence of restrictive covenants which caused non-compliance with the contract. The trial court ordered specific performance of the contract, finding the restrictive covenants to be null and void. Error was found and the case remanded as the judgment was not conclusive as to anyone other than the plaintiff and defendant, the plaintiff's predecessor in title and other grantees not being estopped from thereafter asserting their rights. The Court stated that, "[u]nder such circumstances equity will not require defendant to comply with his contract in direct violation of the stipulation that the property is to be conveyed free of restrictive covenants. If plaintiff desires to have this covenant invalidated and stricken from the deed of the original grantee, he must bring in the interested parties and give them a day in court."

[4-9]    Restrictive covenants are not favored and are to be strictly construed against limitation on use. *Hullett v. Grayson,* 265 N.C. 453, 144 S.E. 2d 206. But a restrictive covenant, if not found inequitable, is enforceable. *Hale v. Moore,* 4 N.C. App. 374, 167 S.E. 2d 12. The servitude imposed by restrictive covenants is a species of incorporeal right. It restrains the owner of the servient estate from making certain use of his property. *Turner v. Glenn,* 220 N.C. 620, 18 S.E. 2d 197. Restrictive covenants create negative easements which are an interest in the land of another, they are vested property rights. *Raleigh v. Edwards,* 235 N.C. 671, 71 S.E. 2d 396. A valid restriction on the use of real property is neither nullified nor superseded by the adoption or enactment of a zoning ordinance, nor is the validity of the covenant thereby affected. 26 C.J.S., Deeds, § 171c(2), p. 1181. The other owners of lots in Hillcrest Farm Subdivision have the right to assert that enforcement of the restrictive covenant for residential uses has not become inequitable and that violations of the restrictions within the development do not amount to such a radical or fundamental change as to destroy the essential objects and purposes of the residential restrictions. The very limited uses of Lots 1 and 2 for non-residential purposes will not be held to have estopped them from asserting their right against subsequent substantial violations within the subdivision. *Tull v. Doctors Building, Inc.,* 255 N.C. 23, 120 S.E. 2d 817.

Since we are of the opinion that this case must be remanded for

new parties and for a further hearing, we shall refrain from a further discussion of the evidence or of the law of the case.

Error and remanded.

BROCK and BRITT, JJ., concur.