KARNER v. ROY WHITE FLOWERS, INC.

[134 N.C. App. 645 (1999)]

---

JANET L. KARNER AND LYMAN G. WELTON, PLAINTIFFS AND LORETTA LEE PENDERGRAST, APRILLE L. SHAFFER AND SHELLY JORDAN, INTERVENOR PLAINTIFFS V. ROY WHITE FLOWERS, INC., ROY J. WHITE, JR., MARGARET C. WHITE, AND EDWARD A. WHITE, DEFENDANTS

No. COA98-80

(Filed 7 September 1999)

## 1. Deeds— restrictive covenants—residential purposes only—motion to require joinder—proper party—necessary party

The trial court did not err in denying plaintiff's motion to require joinder of the non-litigant residential property owners on the basis that defendants' changed conditions defense could result in the invalidation of the restrictive covenants in the residential subdivision because all landowners in the subdivision are not necessary parties, but instead merely proper parties since their interest is fully represented by the present parties.

## 2. Statute of Limitations— incorporeal hereditaments—restrictive covenant—encroachment—prescriptive easement

The trial court did not err in utilizing N.C.G.S. § 1-50(a)(3)'s six-year statute of limitations for injury to incorporeal hereditaments, instead of a twenty-year statute of limitations extinguishing restrictive covenants upon adverse use for the prescriptive period, since the present case involves a restrictive covenant rather than an encroachment and/or prescriptive easement.

## 3. Deeds— restrictive covenant—directed verdict—aware or reasonably aware of violation

The trial court erred in directing verdict for defendants based on a six-year statute of limitations pursuant to N.C.G.S.

§ 1-50(a)(3) on lots 1, 2, and 3 because there is conflicting evidence whether plaintiffs were aware or should have reasonably been aware of a continual violation of the restrictive covenant on those lots from 5 October 1989 to 5 October 1995. However, the trial court did not err in directing verdict for lot 4 because it has been openly used for non-residential purposes for at least twenty-two years before this suit was instituted, and evidence of vacating and demolishing a building which has continually been used for commercial purposes does not indicate in and of itself that the property has returned to a residential use.

Judge GREENE dissenting.

Appeal by Janet L. Karner, Lyman G. Welton, Loretta Lee Pendergrast and Aprille L. Shaffer from order of 9 May 1996 and judgment entered 11 February 1997 by Judge Marvin Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 January 1999.

*James, McElroy & Diehl, P.A., by Paul P. Browne and Law Offices of Kenneth T. Davies, by Kenneth T. Davies, for plaintiff-appellants.*

*Odom & Groves, P.C., by George J. Miller and L. Holmes Eleazer, Jr., for defendant-appellees.*

HUNTER, Judge.

Briefly, the record reveals that the parties are all property owners in Elizabeth Heights, a neighborhood in Charlotte which was developed as a residential subdivision around the turn of the century. Each of the conveyances of lots in Elizabeth Heights to the original grantees, and their heirs and assigns, contained a restrictive covenant that encumbered the lots for use for residential purposes only.

In 1995, defendants began to clear four (4) of their six (6) lots in Elizabeth Heights. After it was reported in a local newspaper that defendants intended to demolish three vacant houses on the property in question and construct a 5,300 square foot commercial building, plaintiffs filed a complaint 5 October 1995 seeking, *inter alia*, to enjoin defendants from erecting a commercial structure. Defendants answered and raised several affirmative defenses, including a defense that the action was barred by N.C. Gen. Stat. § 1-50(a)(3), the

KARNER v. ROY WHITE FLOWERS, INC.

[134 N.C. App. 645 (1999)]

six-year statute of limitations for injury to an incorporeal hereditament, and that the use and character of the neighborhood had changed over the years to such an extent that it was not desirable or economically feasible to use the properties for residential purposes and such covenant should be annulled by the court.

On 18 March 1996, plaintiffs moved the trial court to require defendants to join all other landowners within the relevant area as third party defendants. The court denied plaintiffs' motion in an order entered 9 May 1996.

The case came on for trial and following the presentation of evidence by both parties, the trial court entered an order of directed verdict against plaintiffs on the grounds that their claims were barred by N.C. Gen. Stat. § 1-50(a)(3). Plaintiffs appeal the denial of their motion for joinder and the directed verdict as to lots one (1) through four (4).

## I. Joinder

[1] First, plaintiffs argue that the trial court erred in denying their motion to require joinder of the non-litigant property owners in Elizabeth Heights. Plaintiffs contend that defendants' changed conditions defense could result in the invalidation of the restrictive covenants which apply to Elizabeth Heights; consequently, all landowners in the subdivision are "necessary parties" because their property rights could therefore be affected.

The removal of restrictive covenants is an equitable action based upon whether changed conditions of an area are a "substantial departure" from the purposes of the original plan, and is a matter to be decided in light of the specific circumstances of each case. *Hawthorne v. Realty Syndicate, Inc.*, 300 N.C. 660, 667, 268 S.E.2d 494, 499, *reh. denied*, 301 N.C. 107, 273 S.E.2d 442 (1980). Rule 19 of the North Carolina Rules of Civil Procedure provides that those who are united in interest must be joined as plaintiffs or defendants. N.C. Gen. Stat. § 1A-1, Rule 19(a) (1990). The court may determine any claim before it when the rights of others not before the court are not prejudiced, but when a complete determination of such claim cannot be made without the presence of other parties, the court shall order such other parties summoned to appear in the action. N.C. Gen. Stat. § 1A-1, Rule 19(b) (1990). A necessary party "is one who is so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the contro-

versy without his presence[;]" however, a proper party "is one whose interest may be affected by a decree, but whose presence is not essential in order for the court to adjudicate the rights of others." *Carding Developments v. Gunter & Cooke*, 12 N.C. App. 448, 451-52, 183 S.E.2d 834, 837 (1971). While "necessary parties" must be joined in an action, "proper parties" may be joined, and whether proper parties will be ordered joined rests within the sound discretion of the trial court. *Id.*

Plaintiffs assert that under *Sheets v. Dillon*, 221 N.C. 426, 20 S.E.2d 344 (1942), all property owners in Elizabeth Heights must be joined as necessary parties in the present case. In *Sheets*, the plaintiff sought to enforce a contract of sale of real property, which the defendant refused to complete after learning of residential restrictive covenants in the plaintiffs' chain of title. The trial court found that the defendant was not required to act under the contract. The plaintiff raised the issue of changed conditions in the neighborhood, asserting that the residential covenants were no longer valid, and our Supreme Court remanded the case, stating:

> [T]here is some evidence that plaintiff acquired title under a general scheme or at least tending to show that other grantees of the original grantor may be interested in attempting to so prove. It follows that the original grantor is, and its other grantees *may be*, interested in the enforcement of the covenant plaintiff seeks to annul.

> The judgment herein is not conclusive as to any one other than plaintiff and defendant. Plaintiff's predecessor in title and those who may claim that the covenant was inserted pursuant to a general plan or scheme of development are not estopped from hereafter asserting their rights thereunder. Under such circumstances equity will not require defendant to comply with his contract in direct violation of the stipulation that the property is to be conveyed free of restrictive covenants. If plaintiff desires to have this covenant invalidated and stricken from the deed of the original grantee, he must bring in the interested parties and give them a day in court.

*Id.* at 431-32, 20 S.E.2d at 347-48 (emphasis added). We interpret *Sheets* to stand for the proposition that if one party seeks to "annul" or invalidate a restrictive covenant in equity, based on changed conditions, the interest of other property owners, who may challenge this cause of action, must be represented in the suit. In *Sheets*, the plaintiff property owner sought to annul restrictive covenants, and the

defendant had no property interest in the subject property. Therefore, the interest of other landowners, who may have contested the invalidation, was not represented.

To the contrary, in the present case, the interest of landowners wishing to either oppose or support the assertion of changed conditions is fully represented by the present parties. Other landowners in Elizabeth Heights are not necessary parties for the court to determine whether or not the character of the neighborhood has changed to such an extent that the residential covenants should be annulled. Nor are they necessary for the court to determine any other issue presented in this case. If other landowners in Elizabeth Heights choose to join either the plaintiffs or defendants as parties in this suit, the court could order their joinder as proper; however, the joinder of each individual landowner is not necessary for the action to proceed. Accordingly, we hold that the record reveals no abuse of discretion by the trial court in its denial of the motion for joinder of all property owners in Elizabeth Heights in the present action.

## II. Statute of Limitations

[2] Plaintiffs assert that the trial court erred in entering a directed verdict under the authority of N.C. Gen. Stat. § 1-50(a)(3), a six-year statute of limitation "[f]or injury to any incorporeal hereditament," because the correct statute of limitation in the present case is the "prescriptive period" of twenty years.

Plaintiffs filed suit to enforce a restrictive covenant. "A restrictive covenant is a servitude, commonly referred to as a negative easement, and an easement is an incorporeal hereditament." *Hawthorne v. Realty Syndicate, Inc.*, 43 N.C. App. 436, 440, 259 S.E.2d 591, 593 (1979), *aff'd*, 300 N.C. 660, 268 S.E.2d 494, *reh. denied*, 301 N.C. 107, 273 S.E.2d 442 (1980) (citation omitted). The term "incorporeal hereditament" derives from English law and is defined as:

> Anything, the subject of property, which is inheritable and not tangible or visible. A right issuing out of a thing corporate (whether real or personal) or concerning or annexed to or exercisable within the same. A right growing out of, or concerning, or annexed to, a corporeal thing, but not the substance of the thing itself.

Black's Law Dictionary 726 (6th ed. 1990). This Court has held that N.C. Gen. Stat. § 1-50(a)(3) requires that an action for injury to any "incorporeal hereditament" be brought within six years, and applies

to restrictive covenants. *Hawthorne*, 43 N.C. App. at 440, 259 S.E.2d at 593.

Plaintiffs argue that the statute of limitations rule enunciated in *Hawthorne* does not apply in the present case. They contend that their claims are subject to a twenty-year "statute of limitations" because they are seeking an injunction and "[a]n easement may be extinguished by adverse use by the owner of the servient property for the prescriptive period." *Skvarla v. Park*, 62 N.C. App. 482, 488, 303 S.E.2d 354, 358 (1983). Plaintiffs rely on *Bishop v. Reinhold*, 66 N.C. App. 379, 311 S.E.2d 298, *disc. review denied*, 310 N.C. 743, 315 S.E.2d 700 (1984), for this proposition. The defendant's home in *Bishop* was partially erected on the plaintiff's property in 1973 and plaintiffs sued in 1980 on the basis of continual trespass, seeking removal of the building from their property. The Court noted that in the case of an actual encroachment, a plaintiff "is limited to a single recovery of all damages." *Bishop*, 66 N.C. App. at 383, 311 S.E.2d at 300. The Court held that any claim for relief for actual removal of the structure as in an action for compensation for the easement or for the fee by adverse possession was not barred "until defendants had been in continuous use thereof for a period of twenty years so as to acquire the right by prescription." *Id.* at 384, 311 S.E.2d at 301. The Court apparently relied upon the rule that to obtain such a prescriptive easement in North Carolina,

> a claimant must prove: (1) that its use of the easement was adverse, hostile, or under a claim of right, (2) that the use has been open and notorious, (3) that the use was continuous and uninterrupted for a period of twenty years, and (4) that there is substantial identity of the easement for this twenty year period.

*Boger v. Gatton*, 123 N.C. App. 635, 637, 473 S.E.2d 672, 675, *review denied*, 344 N.C. 733, 478 S.E.2d 3 (1996) (*citing Dickinson v. Pake*, 284 N.C. 576, 580-81, 201 S.E.2d 897, 900-01 (1974)).

Plaintiffs' novel argument, while provoking, lacks merit. The present case is distinguishable from *Bishop* in that a residential restrictive covenant is at issue rather than an encroachment and/or prescriptive easement. While other jurisdictions have found in accordance with the plaintiffs' contention, *Jinkins v. City of Jal*, 386 P.2d 599 (N.M. 1963) (applicable period of limitations in a suit to enjoin violation of restrictive covenant as to use of land was 10-year period of prescription and not three- or four-year statutes of limita-

tion), we have found no authority under the laws of this state which support the position that restrictive covenants may be "extinguished" upon adverse use for a prescriptive period. Because plaintiff has failed to show an exception to the rule announced in *Hawthorne,* we find no error. N.C. Gen. Stat. § 1-50(a)(3) is the applicable statute of limitations in the present case; therefore, plaintiffs' case is barred if this six-year statute of limitation is satisfied.

### III. Accrual of Statute of Limitations Defense

**[3]** Plaintiffs contend that even under N.C. Gen. Stat. § 1-50(a)(3), their action was timely brought because the lots in question were not used for non-residential purposes in a manner that was continuous, open and notorious for the full six-year statutory period.

The trial court found that "there is no dispute between and among the parties that the Defendants have used the subject six (6) parcels of property for non-residential uses in a continuous, open and notorious manner . . . for a period of time in excess of six (6) years prior to filing of the plaintiffs' Complaint on October 5, 1995." Therefore, the trial court concluded that plaintiffs' suit was barred by N.C. Gen. Stat. § 1-50(a)(3) and granted a directed verdict for the defendants.

In ruling on a motion for directed verdict, the trial court must consider the evidence in the light most favorable to the non-movant. This means that the evidence in favor of the non-movant must be taken as true, resolving all conflicts in the non-movant's favor and entitling him to the benefit of all reasonable inferences. *Freeman v. Development Co.,* 25 N.C. App. 56, 212 S.E.2d 190 (1975). If plaintiffs fail to present evidence of each element of their claim for relief, they will not survive a directed verdict motion, *Felts v. Liberty Emergency Service,* 97 N.C. App. 381, 388 S.E.2d 619 (1990), and there must be more than a scintilla of evidence to support each element of the plaintiffs' claim. *Tedder v. Alford,* 128 N.C. App. 27, 493 S.E.2d 487 (1997), *disc. review denied,* 348 N.C. 290, 501 S.E.2d 917 (1998). Finally, a directed verdict should not be granted when conflicting evidence has been presented on contested issues of fact. *Brewer v. Cabarrus Plastics,* 130 N.C. App. 681, 504 S.E.2d 580 (1998), *disc. review denied,* 1999 WL 386187 (N.C. Sup. Ct. Feb. 4, 1999).

Before considering plaintiffs' assignments of error, we must first review the rule as to when the statute of limitation begins running:

> Generally, a cause of action accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. . . . "[A]s soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run. It does not matter that further damage could occur; such further damage is only aggravation of the original injury."

*Liptrap v. City of High Point*, 128 N.C. App. 353, 355, 496 S.E.2d 817, 819, *disc. review denied*, 348 N.C. 73, 505 S.E.2d 873 (1998) (citations omitted). In *Hawthorne*, *supra*, the trial court had found that the action to enjoin defendants from using their property for commercial uses "was brought within three years after the first non-residential use of the defendants' property;" therefore, the statute of limitations did not bar the suit. *Hawthorne*, 43 N.C. App. at 439, 259 S.E.2d at 593. This Court agreed, stating: "G.S. 1-50(3) requires that an action for injury to any incorporeal hereditament be brought within six years. Plaintiffs' action was clearly brought within this period." *Id.* at 440, 259 S.E.2d at 593.

Under *Liptrap* and *Hawthorne*, it is clear that the statute of limitations begins running as to the violation of a restrictive covenant when the plaintiff first becomes aware or should have reasonably become aware of the violation. Therefore, if the plaintiff is aware, or should reasonably be aware of the violation continually for six years, a valid defense exists under N.C. Gen. Stat. § 1-50(a)(3). *Cf. Williamson v. Pope*, 60 N.C. App. 539, 299 S.E.2d 661 (1983) (the court cannot presume that adjoining property owners acquiesce to a violation of a restrictive covenant when they were formerly informed that a violation did not exist, and brought suit once they became aware of violation, thus laches does not bar their suit).

First, plaintiffs contend that the lots in question were not in violation of the restrictive covenants at the time the lawsuit was filed, therefore a statute of limitations defense in the present case is inapplicable. Plaintiffs argue that defendants had vacated any structures on the lots at issue in the summer of 1995 and demolished them at the time suit was brought on 5 October 1995; therefore, assuming *arguendo* that violations of the restrictive covenants had existed prior to the property becoming vacant, the offending use ceased when the lots became vacant, and the residential restrictive covenant again became enforceable because the applicability of a covenant is renewed once the violation ceases. Plaintiffs' cite *Schoenhals v. Close*, 451 S.W.2d 597 (Tx. App. 1970) to support their argument.

In *Schoenhals*, the appropriate statute of limitations was four (4) years, and the plaintiffs brought an action to enjoin the operation of a beauty shop in the garage of a home in their neighborhood. The neighborhood was subject to a residential restrictive covenant. The record revealed that defendant Schoenhals had converted the inside of his garage into a beauty shop in late 1959. In January of 1960 Schoenhals' daughter, Griggs, opened the beauty shop for commercial operation. In October of 1960, the Closes (plaintiffs), purchased the house next to the Schoenhals' lot. At that time, the beauty shop was in operation, and remained in commercial operation until some time in 1964. Griggs did some work in the beauty shop for some ten (10) members of her church on a charitable basis from 1964 until July 1969. Plaintiff Close made over $30,000.00 in improvements to his property during the period from 1964 to 1969 when commercial activity surrounding the beauty shop had ceased. Griggs made arrangements to resume commercial operations of the beauty shop in July 1969, at which point the plaintiff brought suit to enjoin the commercial operation for violation of a restrictive covenant. The court found that the determinative question was whether a party who acquires a right through the statute of limitations to operate a commercial enterprise in contravention of a restrictive covenant may lose that right by abandonment. Answering in the affirmative, the court stated:

> A restriction may become unenforceable with respect to a particular lot in a tract under the defenses of the statute of limitations, waiver, or laches. Even though a party has violated a restrictive covenant and is able to continue to do so under one of the foregoing defenses, the restrictive covenant will continue to exist, "even if the violation as it exists, continues." If the violation ceases, the covenant will once more become effective and will bar any future violations. Any other result would, in effect, seriously impair the usefulness and value of restrictive covenants, as any prospective purchaser of a home in a residential area could never be certain that a previous violation of a restrictive covenant in the neighborhood had not rendered that covenant ineffective.

*Schoenhals*, 451 S.W.2d at 599-600 (citation omitted). The court noted that the beauty shop ceased its commercial activity some time in 1964, and from the outside, a casual observer would not have noticed anything unusual about the garage during that period. The court found that "[w]hen appellants ceased to violate the restrictive covenant, they waived the rights they may have acquired during the

previous operation of the beauty shop." *Id.* at 600. Likewise, "[n]one of the neighbors would have been able to maintain a suit during this period as the appellants were not at that time violating the restrictive covenant." *Id.* The Texas Court of Appeals held that the defendants' violation in 1969 started the running of the statute of limitations once again; therefore, plaintiffs were not barred by Texas' four-year statute of limitations when they filed suit in ten days after learning of commercial activity in the defendants' garage. *Id.*

We agree with the reasoning in the *Schoenhals* case. Although the violation of the restrictive covenant for the statutory period may be asserted as a defense, such violation does not invalidate the restrictive covenant in perpetuity. The violation must exist continually, and plaintiff must be aware or should have reasonably been aware of it, for the full statutory period in order for a valid defense to exist under N.C. Gen. Stat. § 1-50(a)(3). Therefore, our inquiry now turns to whether the plaintiffs were or should have been reasonably aware of the continued non-residential use of lots one (1), two (2), three (3), and four (4), from 5 October 1989 to 5 October 1995, satisfying the six-year statute of limitations and therefore barring the present action, which was filed on 5 October 1995.

The evidence presented by the plaintiffs to the trial court indicates that two neighbors testified that the house on lot one (1) was vacant from the summer of 1989, when Tim Irby moved from the house, until the time of the commencement of this action, and that there was no apparent use of the property, as the windows were boarded up, no signage was attached to the property, and no one was seen going in or out of the house. Defendants presented evidence to the trial court indicating that Tim Irby lived in the building on lot one (1) from 1983 to the summer of 1989, where he openly operated a business, "Everything on East," during that time. From the time Irby left in 1989 until shortly before the October 1995 demolition of the building, defendants presented evidence that the structure was commercially used for storage of various items related to the flower shop business "Roy White Flowers, Inc."

As to lot two (2), plaintiffs presented evidence which indicated that the house located thereon was occupied as a residence by Mitchell Cooper and others from July 1988 until 30 September 1989 in a "boarding house type situation." Cooper testified that his lease was residential, requiring a $50.00 deposit for a waterbed. He also testified that the rent payments to defendant Edward A. White varied over

**KARNER v. ROY WHITE FLOWERS, INC.**

[134 N.C. App. 645 (1999)]

the term of the lease because the lease provided for monthly rent of $700.00 for the first six (6) people, and $100.00 for each additional individual living in the home. Defendants presented evidence that Mr. Cooper used the house on lot two (2) "in a non-residential manner as a place for his business, a rock-and-roll band, to practice music." They presented evidence that Cooper installed sound-dampening material to improve acoustics for and to reduce noise from the practices. Defendants also presented evidence that the house was vacant from 30 September 1989 until it was rented by Tom Brown in November 1989. At some point before the summer of 1990, Brown opened a small consignment shop named "The Girl Can't Help It" on the first floor of the house. Plaintiffs contend Brown also used the structure for a residence. The house became vacant in September 1995 and was torn down in October 1995.

In regards to lot three (3), it is uncontested that it has been a vacant, grassy lot since the early 1980s when the building thereon was destroyed by fire. Defendants' evidence indicated that during the time that Mitchell Cooper occupied the house on lot two (2), from July 1988 to 30 September 1989, he and his house and/or band-mates used lot three (3) for parking. It also indicated that from October 1989 to September 1995, the vacant lot was used for overflow parking from defendant Roy White's business, that from 1983 to 1989 it was used for parking for Mr. Irby's business on lot one (1), and from the spring of 1990 to sometime in 1995, it was used for parking for Mr. Brown's business on lot two (2). Plaintiffs presented testimony by Lyman G. Welton, who had lived in the neighborhood since 1980 and had walked past lot three (3) "hundreds of time[s]," that he had "very rarely" seen cars parked on lot three (3) between 1980 and the date of commencement of this case. Mitchell Cooper testified that he never saw any employees of defendant Roy White Flowers, Inc. use lot three (3) for parking between July 1988 and October 1995. Plaintiffs also presented evidence that the "grassy" lot was never paved or improved in any manner.

Viewing the evidence in the light most favorable to plaintiffs, we hold that there is conflicting evidence as to whether plaintiffs were aware or should have reasonably been aware of a violation of the residential restrictive covenant on lots one (1), two (2), and three (3) from 5 October 1989 to 5 October 1995 and therefore this issue could not have been determined by the trial court as a matter of law. We hold the directed verdict was in error and this issue should have gone to the jury.

KARNER v. ROY WHITE FLOWERS, INC.

[134 N.C. App. 645 (1999)]

The evidence indicates that lot four (4) had been used for non-residential purposes for at least twenty-two (22) years when this suit was instituted. The building on lot four (4) was openly used for and operated as a food cooperative business from 1973 until 1987. From 1987 until shortly before demolition of the building on the lot in 1995, the building was openly used to house "Bucky Adams Pet Grooming," a small dog grooming business. Defendants presented evidence that the house was demolished for commercial development, therefore, commercial activity never ceased. Plaintiffs presented evidence that the house on lot four (4) was vacated for about five (5) or six (6) months and was eventually demolished prior to the commencement of litigation in this case. The vacation and demolishment of a building which has continually been used for commercial purposes does not indicate in and of itself that the property has returned to a residential use. Plaintiffs did not present a scintilla of evidence that they were not aware or should not have reasonably been aware that commercial use of the property continued after the pet grooming business vacated the premises. Viewing the evidence in the light most favorable to plaintiffs, we hold that there is no conflicting evidence as to whether plaintiffs were aware or should have reasonably been aware of a violation of the restrictive covenant on lot four (4) from 5 October 1989 to 5 October 1995. Therefore, the trial court did not err in granting a directed verdict pursuant to N.C. Gen. Stat. § 1-50(a)(3) in regards to lot four (4).

Based on the foregoing, we affirm the trial court's denial of joinder, application of N.C. Gen. Stat. § 1-50(a)(3), and directed verdict as to lot four (4), and reverse and remand the directed verdict as to lots one (1), two (2), and three (3).

Affirmed in part; reversed and remanded in part.

Judge JOHN concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I do not agree that the trial court correctly denied plaintiffs' motion for joinder of all property owners in Elizabeth Heights in the present action. I therefore would reverse the trial court on this issue and remand for joinder of all property owners in Elizabeth Heights. Further, I would not address the issues relating to the statute of limitations.

Plaintiffs contend that all property owners in Elizabeth Heights are necessary parties to this action, and I agree.

When there is a uniform plan of development for real property and a restrictive covenant placed on that property is in dispute, all the owners of lots in that development are "necessarily interested parties in any action against or by [any] lot owner." *Hillcrest Building Co. v. Peacock*, 7 N.C. App. 77, 82, 171 S.E.2d 193, 196 (1969); *see also Muilenburg v. Blevins*, 242 N.C. 271, 276, 87 S.E.2d 493, 497 (1955). It follows that all the lot owners must be made parties to the action. *See Hillcrest Building Co.*, 7 N.C. App. at 83, 171 S.E.2d at 196; *see also* N.C. Gen. Stat. § 1A-1, Rule 19(a) (1990). If the same restrictive covenants are placed in all the deeds conveying property within the area, it is presumed for the purpose of ascertaining necessary parties that the property was sold pursuant to a general plan of development. *See Muilenburg*, 242 N.C. at 276, 87 S.E.2d at 497.

This case involves an attempt by a property owner in Elizabeth Heights to annul a restrictive covenant. All of the original conveyances of lots in the Elizabeth Heights subdivision contained a restrictive covenant allowing only residential use by the grantees, their heirs and assigns. Therefore, since there is no evidence in this record that the property in Elizabeth Heights was not sold pursuant to a general scheme or plan of development, all of the owners in Elizabeth Heights are necessary parties and must be joined in this action.