IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1171

Filed: 2 August 2016

Hyde County, No. 15CVS16

OCRACOMAX, LLC, Plaintiff-Appellee,

v.

CHRISTOPHER M. DAVIS and wife, JENNIFER L. DAVIS, OCRACOKE HORIZONS UNIT OWNERS ASSOCIATION, INC., Defendants-Appellants.

Appeal by defendants from Order entered 18 June 2015 by Judge Wayland J. Sermons, Jr. in Hyde County Superior Court. Heard in the Court of Appeals 28 April 2016.

> *L. Phillip Hornthal III for plaintiff-appellee.*
>
> *Vandeventer Black LLP, by Kevin A. Rust and Wyatt M. Booth, for defendants-appellants.*

ELMORE, Judge.

Ocracomax, LLC (plaintiff) filed a complaint on 26 February 2015 against Christopher M. Davis and wife, Jennifer L. Davis, and Ocracoke Horizons Unit Owners Association, Inc. (defendants) seeking a declaratory judgment and a mandatory injunction. Defendants appeal from the trial court's order granting plaintiff's motion for judgment on the pleadings and denying defendants' motion to dismiss. After careful review, we affirm.

**I. Background**

The issue in this case involves two condominium unit owners at Ocracoke Horizons Condominiums who were unable to reach an agreement regarding two parking spaces in the covered garage in their shared building. Ocracoke Horizons Condominiums is a condominium complex on Ocracoke Island and was created pursuant to Chapter 47C of the North Carolina General Statutes (The North Carolina Condominium Act) and by virtue of a Condominium Declaration (Declaration), recorded 30 July 1991 in the Hyde County Register of Deeds.

Plaintiff recorded its deed for unit 1B on 20 May 2011, and the Davises recorded their deed for unit 1A on 19 January 2012. Both deeds contain the following language: "Each Unit is conveyed subject to that 'Condominium Declaration' and all the terms and provisions thereof as recorded in Book 140, beginning at page 834, Hyde County Registry[.]" The Declaration lists "Limited Common Elements" in Article III, Section 1, including "one parking space large enough for two average-sized (10' x 20' each) passenger cars per Unit[.]" The shared, covered garage for units 1A and 1B contains two adjacent parking spaces, as described above. There is no specific allocation or assignment of a particular parking space as between units 1A and 1B.

In plaintiff's complaint, it alleged the following: The Davises' predecessor, who originally owned both units, built a shed on part of one of the parking spaces. The Davises maintain ownership of the shed and claim they are entitled to both the full parking space and the portion of the second parking space that contains the shed.

The Davises' concurrent use of the shed and full parking space is contrary to plaintiff's property rights afforded in the limited common elements as defined by Article III of the Declaration. The Association, through its President John D. Wooton, the law partner of Christopher Davis, has declined to enforce plaintiff's right to parking or take action against the Davises.

Accordingly, plaintiff alleged it "is entitled to a judgment declaring that the nonconforming shed is a change in the appearance of the Common Elements or the exterior appearance of a Unit . . . as prohibited by the Declaration." Additionally, "plaintiff is entitled to a judgment declaring its right to a parking space appurtenant to plaintiff's unit . . . and/or requiring defendants Davis to remove the non-conforming structure, the shed." In its second claim, plaintiff alternatively requests a mandatory injunction ordering the Davises or the Association to remove the shed.

In defendants' answer and motion to dismiss, they argue that plaintiff lacks standing to sue the Association and that plaintiff's complaint is barred by the statute of limitations. Defendants also assert the affirmative defenses of estoppel, the doctrine of laches, and waiver. Plaintiff moved for judgment on the pleadings, and after a hearing on the motions, the Hyde County Superior Court entered an order on 18 June 2015 as follows:

> (1) Defendant's Motion to dismiss is DENIED;
>
> (2) Plaintiff's Motion for Judgment on the Pleadings is GRANTED;

(3) The Court declares that the prior built shed referenced in the pleadings in the garage serving Units 1A and 1B of Ocracoke Horizons Condominiums was a change in the appearance and use of the limited common areas as set forth in Article III of Section 1 of the Condominium Declaration recorded July 30, 1992[1] in Volume 140, Page 834 of the Hyde County Registry.

(4) The Court further declares and orders that the plaintiff is entitled to one parking place large enough for two averaged-sized (ten feet by twenty feet) passenger cars, and that plaintiff is entitled to that parking within the confines of that limited common area denominated as "Garage" for Units 1A and 1B as shown on sheet three of the plat for Ocracoke Horizon Condominiums, as recorded in Condominium Cabinet C, page 383-C, which has not been altered by the erection of a shed.

(5) Costs are taxed to the defendants.

(6) Defendant's oral motion for stay of this Order pending appeal is DENIED.

Defendants appeal.

## II. Analysis

Pursuant to Rule 12(c) of our Rules of Civil Procedure, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." N.C. Gen. Stat. § 1A-1, Rule 12(c) (2015). "Judgments on the pleadings are disfavored in law, and the trial court must view the facts and permissible inferences in the light most favorable to the non-moving party." *Groves*

---

[1] The record reveals the Declaration was recorded 30 July 1991.

*v. Cmty. Hous. Corp.*, 144 N.C. App. 79, 87, 548 S.E.2d 535, 540 (2001) (citing *Flexolite Elec. v. Gilliam,* 55 N.C. App. 86, 88, 284 S.E.2d 523, 524 (1981)). Therefore, the motion " 'should only be granted when the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law.' " *New Bar P'ship v. Martin*, 221 N.C. App. 302, 306, 729 S.E.2d 675, 680 (2012) (quoting *Cash v. State Farm Mut. Auto. Ins. Co.*, 137 N.C. App. 192, 201–02, 528 S.E.2d 372, 378, *aff'd per curiam*, 353 N.C. 257, 538 S.E.2d 569 (2000)). We review a trial court's order granting a motion for judgment on the pleadings *de novo*. *Id.* at 307, 729 S.E.2d at 680.

The authority of a court to enter a declaratory judgment is provided for in N.C. Gen. Stat. § 1-253 (2015), which provides,

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. . . . The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

Furthermore,

> [a]ny person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity . . . and obtain a declaration of rights, status, or other legal relations thereunder.

N.C. Gen. Stat. § 1-254 (2015).

Our General Assembly has provided that Article 26, governing declaratory judgments, "is to be liberally construed and administered." N.C. Gen. Stat. § 1-264 (2015). "[I]ts purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" *Id.* Our Supreme Court has stated, "While the statute does not expressly so provide, this Court has held on a number of occasions that courts have jurisdiction to render declaratory judgments only when the pleadings and evidence disclose the existence of an actual controversy between parties having adverse interests in the matter in dispute." *Gaston Bd. of Realtors v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984) (citations omitted).

As stated above, pursuant to Article III of the Declaration, the limited common elements consist of, *inter alia*, "one parking space large enough for two average-sized (10' x 20' each) passenger cars per Unit . . . . The above listed Common Elements are located outside the Unit's boundaries, designed to serve a single Unit and allocated exclusively to that Unit." Article V, entitled "Regulations and Restrictions," provides, "A unit owner may not change the appearance of the Common Elements or the exterior appearance of a Unit or any other portion of the Condominium without permission of the Association as provided in the Bylaws."

The Bylaws provide, "The failure of . . . a Unit Owner to enforce any right, provision, covenant or condition which may be granted by the Condominium Instruments or the Condominium Act shall not constitute a waiver of the right of the

. . . Unit Owner to enforce such right, provision, covenant or condition in the future."

The Bylaws further state,

> Failure to comply with any of the Condominium Instruments and the Rules and Regulations shall be grounds for relief, including without limitation, an action to recover any sum due for money damages, injunctive relief, . . . any other relief provided for in these Bylaws or any combination thereof and any other relief afforded by a court of competent jurisdiction, all of which relief may be sought . . . by any aggrieved Unit Owner[.]"

A. Waiver

Defendants argue that plaintiff waived its right to enforce the Declaration because it had actual knowledge of the shed prior to purchasing unit 1B, utilized the shed for a number of years, and made no objection to the shed's existence until over three years after its purchase. Defendants claim that any right not illegal or contrary to public policy may be waived. Plaintiff responds by citing the "No Waiver of Rights" clause in the Bylaws and by noting that its primary relief sought was "its right to parking."

Defendants' argument relies on two restrictive covenants cases. In *Medearis v. Trustees of Myers Park Baptist Church*, 148 N.C. App. 1, 13–14, 558 S.E.2d 199, 207–08 (2001), the plaintiffs were deemed to have waived their rights to enforce residential restrictions, which would have imposed an undue hardship on the defendants, who already spent over $1.5 million in acquiring property and with whom the plaintiffs negotiated repeatedly to redesign the construction plans. In *Rodgerson*

*v. Davis*, 27 N.C. App. 173, 179, 218 S.E.2d 471, 475 (1975), this Court stated, "Where restrictions have been imposed according to a general plan, one of the grantees of lots subject thereto, who has himself violated such restrictions, will not be allowed in equity to complain against similar violations by other grantees."

Here, in contrast, plaintiff is not attempting to enforce a restrictive covenant. The trial court granted plaintiff's primary relief requested, that is, a declaratory judgment acknowledging its right to one parking space large enough to fit two passenger cars. Per the Bylaws listed above, plaintiff's alleged failure to immediately enforce its delineated right shall not constitute a waiver of its right to enforce it in the future. As defendants point out, plaintiff's purchase agreement states, "[T]he storage shed immediately adjacent to unit 1A is the property of unit 1A." Plaintiff's failure to object to the shed, however, did not waive plaintiff's separate right to one parking space, which remained available in the covered garage despite the shed.

In defendants' reply brief, they assert that plaintiff "had actual or constructive notice of the shed and parking issues prior to purchase." As plaintiff's counsel stated at the hearing, though, "the notice that [plaintiff] had was that there was a shed that the Davises claimed they owned that sat in the middle of a parking place, so what does that tell [plaintiff]? 'Oh, we're good. We've got the other side, so we got what we want, no problem[.]' " Regardless of whether plaintiff had notice of "parking issues," such fact does not waive plaintiff's right, under the Declaration, to one full

parking space.

## B. Quasi-Estoppel

Defendants argue that plaintiff's complaint is barred by the doctrine of quasi-estoppel or estoppel by benefit because plaintiff has used the shed and is now taking an inconsistent position after accepting a benefit.

Under a quasi-estoppel or estoppel by benefit theory, "a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 18, 591 S.E.2d 870, 881–82 (2004) (citations omitted).

Here, it is undisputed that the Davises, as owners of Unit 1A, own the shed. There is no evidence, however, that plaintiff accepted a benefit under a transaction or an instrument. The record reveals only that plaintiff's purchase agreement stated that "the storage shed immediately adjacent to unit 1A is the property of unit 1A." The record does not reveal that plaintiff received a benefit under the purchase agreement or that plaintiff is taking a position inconsistent with a prior acceptance of that or any other instrument. Accordingly, plaintiff is not estopped from seeking a declaration of its right to one parking space.

## C. Standing

Defendants claim that plaintiff lacks standing to sue the Association, citing

N.C. Gen. Stat. § 55A-7-40(a). Plaintiff responds by citing the Declaration, which provides that relief may be brought by any aggrieved unit owner.

Chapter 55A of our General Statutes contains the North Carolina Nonprofit Corporation Act, and N.C. Gen. Stat. § 55A-7-40 covers derivative proceedings. "A derivative proceeding is a civil action brought by a shareholder in the right of a corporation, . . . while an individual action is one a shareholder brings to enforce a right which belongs to him personally." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395, 537 S.E.2d 248, 253 (2000) (citations and quotations omitted). As this is not a derivative proceeding, N.C. Gen. Stat. § 55A-7-40 does not apply. As stated above, the Bylaws specifically provide that any aggrieved unit owner may seek relief for failure to comply with any of the condominium instruments, rules, and regulations, including injunctive relief and any other relief afforded by a court of competent jurisdiction. Accordingly, defendants' argument fails.

D. Doctrine of Laches

Defendants argue that the doctrine of laches bars plaintiff's claims because plaintiff waited nearly four years after purchasing the unit to bring suit.

This Court has previously stated,

> To establish the affirmative defense of laches, our case law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case; however, the mere passage of

time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*MMR Holdings, LLC v. City of Charlotte*, 148 N.C. App. 208, 209–10, 558 S.E.2d 197, 198 (2001) (citations omitted).

Here, defendants argue, "Plaintiff could have easily raised this issue at the time of their purchase, or at any time shortly thereafter. Instead, Plaintiff waited until nearly four (4) years after the Davis Defendants purchased their unit to bring this action." Defendants focus only on the passage of time. It is well established, however, that "the mere passage of time is insufficient to support a finding of laches." *MMR Holdings, LLC*, 148 N.C. App. at 209, 558 S.E.2d at 198. Defendants fail to allege that plaintiff's delay worked to their disadvantage, injury, or prejudice. Rather, as counsel for defendants conceded at the hearing, the shed was built "fifteen years ago before [the Davises] ever owned it." Accordingly, defendants' defense fails.

E. Statute of Limitations

Lastly, defendants claim that the trial court erred in granting plaintiff's motion because its complaint is barred by the statute of limitations. Defendants state that the statute of limitations for an action for injury to any incorporeal hereditament under N.C. Gen. Stat. § 1-50(a)(3) is six years. Defendants reason that, because the shed has existed for more than six years, the statute of limitations has run, citing

*Duke Energy Carolinas, LLC v. Gray*, ___ N.C. App. ___, 766 S.E.2d 354 (COA 14-283) (Dec. 2, 2014), *review allowed*, 772 S.E.2d 857 (2015) and 773 S.E.2d 57 (2015). Plaintiff argues that an incorporeal hereditament is a restriction on use and does not apply here. Further, plaintiff claims that even if it did apply, plaintiff brought suit within six years of purchasing unit 1B.

"The application of any statutory or contractual time limit requires an initial determination of when that limitations period begins to run. A cause of action generally accrues when the right to institute and maintain a suit arises." *Duke Energy Carolinas, LLC*, ___ N.C. App. at ___, 766 S.E.2d at 358 (quoting *Register v. White*, 358 N.C. 691, 697, 599 S.E.2d 549, 554 (2004)) (quotations omitted).

The term "incorporeal hereditament" has been defined as:

> Anything, the subject of property, which is inheritable and not tangible or visible. A right issuing out of a thing corporate (whether real or personal) or concerning or annexed to or exercisable within the same. A right growing out of, or concerning, or annexed to, a corporeal thing, but not the substance of the thing itself.

*Karner v. Roy White Flowers, Inc.*, 134 N.C. App. 645, 649, 518 S.E.2d 563, 567 (1999) (quoting Black's Law Dictionary 726 (6th ed. 1990)), *rev'd in part on other grounds*, 351 N.C. 433, 527 S.E.2d 40 (2000).

In *Duke Energy Carolinas, LLC v. Gray*, the plaintiff was granted a 200-foot easement in 1951. ___ N.C. App. at ___, 766 S.E.2d at 356. In 2006, Wieland Homes built a house on a lot, which included a strip of land located within the plaintiff's

easement. *Id.* The house was complete by 11 October 2006, the date the County issued a Certificate of Occupancy for the house, and the defendant purchased the house in 2007. *Id.* The plaintiff wrote to the defendant in 2010, informing him of the encroachment, however, the plaintiff did not file suit until 12 December 2012. *Id.* at ___, 766 S.E.2d at 356–57. This Court affirmed the trial court's grant of summary judgment in favor of the defendant, holding "that the statute of limitations for a claim based on injury to an easement runs from the time that the claim accrues, even if a plaintiff is not aware of the injury at that time." *Id.* at ___, 766 S.E.2d at 359. Accordingly, we rejected the plaintiff's argument that "the statute of limitations does not begin to run until the encroachment on an easement is known or should reasonably be known." *Id.*

Relying on that holding, defendants claim "the Shed has been in existence at its current location for more than six (6) years. In fact, the Shed has existed for some fifteen (15) year period prior to Plaintiff's purchase of its unit. As such, the statute of limitations on Plaintiff's Complaint has run." (Internal citations omitted). We acknowledge that plaintiff's primary relief requested was its right to one full parking space. A significant distinction between the facts of *Duke Energy Carolinas, LLC* and the facts of this case is that here, plaintiff did not own its unit when the shed was built. Unlike in *Duke Energy Carolinas, LLC* where the plaintiff had continuously maintained the easement when the encroachment occurred, here plaintiff did not

acquire an ownership interest in its unit until roughly fifteen years after the shed was built.

We agree with plaintiff that, assuming the six year statute of limitations applies, it could not begin to run until plaintiff purchased unit 1B, which was in May 2011. As counsel for plaintiff stated, when the shed was built, "[t]here was unity of ownership, so there was no damage to anybody. The same guy owned both places." Accordingly, because plaintiff filed its complaint within six years of purchasing unit 1B, its claim is not barred by the statute of limitations.

F. Motion to Dismiss

Defendants briefly argue that the trial court erred in denying their motion to dismiss. An order denying a motion to dismiss, however, is generally not appealable. *Thompson v. Norfolk S. Ry. Co.*, 140 N.C. App. 115, 121, 535 S.E.2d 397, 401 (2000) (citing *Country Club of Johnston County, Inc. v. U.S. Fidelity and Guar. Co.*, 135 N.C. App. 159, 519 S.E.2d 540 (1999)). Accordingly, this portion of defendants' appeal is not properly before us, and we are precluded from reviewing the merits.

### III. Conclusion

For the reasons stated throughout, the trial court did not err in granting plaintiff's motion for judgment on the pleadings.

AFFIRMED.

Judges DILLON and ZACHARY concur.